## HOYT *vs.* CARTER.

Where M. had diverted the water of a stream running through the land of S. by digging a canal or aqueduct leading from a point above S.'s land to M.'s mill, and after he had used the same for several years his executor, in execution of the trusts of his will, conveyed to a grantee of S., who then owned the bed of the stream, a piece of land across which the canal passed and extending below M.'s mill, *excepting and reserving* the mill dam, and the aqueduct &c. so constructed for the purpose of conducting the water

Hoyt *v.* Carter.

to the mill of M.; and the right at all times forever thereafter to the use of the water in the aqueduct, and to continue the dam and aqueduct upon said premises, and to enter upon the premises to rebuild or repair the same: *Held* that it was the intention of the parties to that conveyance to secure to the owner of the mill the use of the water, and the right to divert it in the manner in which it was then conducted to the mill. And that such was the legal effect of the reservation in the deed.

*Held also,* that such reservation became binding upon the grantee, and his assigns, as an *implied covenant.* And that as against them, the owner of the mill secured to himself and his assigns the right to use the water in the manner stipulated in the reservation.

Where the owner of land, over which a stream of water ran, conveyed the land to S., *reserving the stream,* but for nearly thirty years omitted to take possession of, or occupy, the stream; and the defendant and his grantors diverted the same, and had an uninterrupted enjoyment of the water, during that time, for the purpose of supplying their mill on adjacent premises, which enjoyment was open, notorious and exclusive; *Held* that this adverse enjoyment was sufficient of itself to support a title, as against a grantee of the original owner.

In analogy to the statute of limitations. the law, under such circumstances, authorizes a grant from the real owner to be presumed, without other proof than such actual and undisturbed enjoyment.

THIS action was brought to restrain the defendant from diverting a stream of water running near what is called the Hollow road, in the sixth ward of the city of Troy, so as to prevent its running in its natural channel to a building lately erected by the plaintiff for an India rubber factory. The complaint stated that the plaintiff was the owner in fee of the land upon which he had erected his factory, that over, along and across his said land and adjoining the south side of the Hollow road, which was the northern boundary of the plaintiff's land, there flowed and ran a valuable stream of water having sufficient power to drive or carry extensive machinery, and affording valuable water powers and mill privileges; that the stream then flowed in its natural bed and channel, where the same had run and flowed from time out of mind; that the plaintiff had erected his building over and upon the natural bed of the stream and where he could obtain the power necessary to drive or carry his machinery. And that the building was nearly completed and fit for use. The complaint then stated, that the defendant

was about to divert the stream from its natural bed or channel, at a point above the plaintiff's building, and to conduct it through troughs, canals or otherwise, across or under the road, and thence along the northerly side of the road to the Poestenkill creek, in such a manner as to carry the whole of the stream away from the plaintiff's building, and that he had commenced digging for that purpose.

The defendant in his answer stated that he had the right to divert the water in the stream, in the manner alleged in the complaint, for the purpose of conducting it to a certain grist mill which belonged to Ephraim Morgan at the time of his death. This fact fact was put in issue by the reply. The action was tried at the Rensselaer circuit in January, 1851, without a jury.

The plaintiff gave in evidence a deed from Stephen Van Rensselaer to Stephen I. Schuyler, dated November 28, 1794, for a tract of land embracing the premises in question, as well those of the defendant as the plaintiff. This deed was in the usual form of manor grants, reserving to the grantor certain annual rents, and also "all kills, creeks, streams and runs of water in and upon the said premises, together with the soil under the said water, and the right," &c. Also, a deed from Schuyler to Ephraim Morgan and William Neafus, dated December 29, 1813, for a part of the premises lying on both sides of the Hollow road, including the lands now owned by both parties to this suit. On the 14th of January, 1815, Neafus released all his interest in this grant to Morgan. These conveyances were made subject to the reservations in the deed from Van Rensselaer to Schuyler. Also, the last will and testament of Ephraim Morgan deceased, whereby, among other things, he authorized his executors to sell his real estate, with the exception of his grist mill. Also, a deed from Ebenezer Wiswall, in execution of the trusts of the will, to Stephen Warren, dated October 31, 1829, for the premises lying south of the Hollow road. This deed contained an exception or reservation in the following terms : " excepting and reserving out of and from the above described premises the mill-dam, aqueduct and apparatus upon said premises, constructed for the purpose of conducting the stream and run of water

running upon said premises to the grist mill which belong-
ed to the late Ephraim Morgan, at the time of his death, and
also the right, at all times, forever hereafter, to the use of the
said water in the said aqueduct, and to continue the said dam and
aqueduct upon the said premises, together with the said appa-
ratus, as the same was used on the 31st day of October, 1829,
or to construct, instead thereof, and continue, any necessary
and proper dam, aqueduct and apparatus upon said premises
hereby granted for the purpose aforesaid, and to conduct the
said stream of water from said premises to said mill. And also
the right at all times forever hereafter to enter upon said prem-
ises for the purpose of repairing, relaying and rebuilding the
same dam, aqueduct and apparatus which may be so as aforesaid
constructed instead of those now in use, for the purpose of raising
a head and conducting said water from said premises to the
mill aforesaid, or to any mill or machinery which may be built
or constructed instead thereof, or near the same, and in lieu there-
of." Also, a deed from Stephen Warren to John P. Cushman and
others, dated April 1, 1835, conveying the same premises. Also,
a deed from John P. Cushman and others to the plaintiff, dated
January 1, 1842, conveying half an acre of the same premises,
below and immediately next to the dam mentioned in the reser-
vation. Also, another deed from John P. Cushman and others
to the plaintiff, dated the 14th day of March, 1845, conveying
another piece of land adjoining the half acre before conveyed
on the west, and being 150 feet in front on the highway. Each
of the three last mentioned deeds contained the same reserva-
tion as that from Wiswall to Warren. The plaintiff also gave
in evidence a deed of release executed by Stephen Van Rensse-
laer to Cushman and others, dated March 3, 1837, whereby the
grantor released and quitclaimed to the grantees certain parcels
of land, and, among others, a part of the farm leased to Stephen
I. Schuyler in 1794, and including the lands lying south of the
Hollow road which had previously been conveyed to said Cush-
man and his associates. Also, a deed from John P. Cushman
and his associates, to B. Tallmadge Cushman, dated September
22, 1840, conveying all the land south of the Hollow road de-

scribed in the deed from Warren to the grantors and not before sold and conveyed to the plaintiff. Also, a deed from B. Tallmadge Cushman to the plaintiff, dated May 20, 1849, conveying all the interest which John P. Cushman and his associates had acquired by their deeds from Warren and Stephen Van Rensselaer to a piece of land lying west of the land previously conveyed to the plaintiff and extending one hundred feet in front on the south side of the Hollow road. It appeared by a map produced and proved upon the trial, that the building erected by the plaintiff stood mostly upon the last mentioned land. A small part of the building stood upon the lot conveyed to the plaintiff in 1845. On the same day that the last mentioned deed was executed, B. Tallmadge Cushman also quitclaimed to the plaintiff, for the consideration of one dollar, " all the right, title and interest which he had, if any, in and to the water course passing over and through the two pieces of land severally conveyed by John P. Cushman and Sylvester Norton to Archibald Hoyt, by deeds dated January 1, 1842, and March 14, 1845."

The defendant gave in evidence a deed from the heirs of Ephraim Morgan to himself, dated May 1, 1835, for the grist mill and premises on the north side of the Hollow road, including the water privileges, described in the same terms as contained in the reservation in the deed from Wiswall to Warren. Also, a deed from the plaintiff to himself, dated January 2, 1842, for the easterly half of the piece of land below the dam, conveyed the day previous by Cushman and others to the plaintiff. This deed contained the following reservation : " excepting and reserving out of the above described premises the water of the stream crossing the same, and the right to the use thereof as a water power, at any time and in such manner as the owner or occupant shall see fit, and for that purpose to enter, at any time, upon the said premises, to erect or repair any work necessary to the successful use of said water as a water power." It was also proved upon the trial that the defendant's mill was built in 1808 or 1809 ; that from that time, until the defendant purchased, and for a short time afterwards, the water of the stream was diverted from its natural channel and conducted to the mill,

Hoyt *v.* Carter.

in the same manner in which the defendant now claims the right to divert and conduct it. The proof showed that the water continued to run through the aqueduct, until about the year 1844, since which time the stream had run in its natural channel.

*J. Pierson* and *A. B. Olin,* for the plaintiff.

*D. Buel, Jr.* and *C. L. Tracy,* for the defendant.

Harris, J.   There can be no doubt, I think, that when Wiswall, acting on behalf of the estate of Morgan, conveyed to Warren the premises now owned by the plaintiff, it was the intention of the parties to that conveyance to secure to the owners of the mill, the use of the water and the right to divert it in the manner in which it was then conducted from the dam to the mill.   This is the clear legal effect of the reservation in the deed.   It became binding upon the grantees and their assigns as an implied covenant.   As against these parties, the owners of the mill secured to themselves and their assigns the right to use the water in the manner stipulated in the reservation.   (*Case* v. *Haight,* 3 *Wend.* 632.)   The plaintiff had actual as well as constructive notice of this right, for in both his deeds from Cushman and his associates, the reservation is inserted in the same terms in which it is made in the grant from Wiswall to Warren.   It is worthy of remark, too, that these deeds were executed long after the title to the water privilege, if any was acquired by the release from Van Rensselaer, had become vested in the plaintiff's grantors. Whether it was so in fact or not, it is quite evident that the parties understood, when these deeds were executed, that the owners of the mill had the right to divert the water in the manner specified in the deeds.   The grantors made no claim to the water, and therefore reserved it in their deeds, to prevent any liability upon their covenants of warranty.   B. Tallmadge Cushman, too, was careful, in his deed to the plaintiff, to convey only such interest in the land described as had been acquired

by his grantors, under their deeds from Warren and Van Rensselaer. There is nothing in any of the deeds under which the plaintiff claims, which amounts even to an assertion of title to the water by his grantors. On the other hand, there is a distinct assertion of the right to divert the water for the purposes of the mill, in the deed from Wiswall to Warren. That right is again asserted in the conveyance from the heirs of Morgan to the defendant in 1838; and, in the deed from the plaintiff himself to the defendant, executed on the 2d of January, 1842, he reserves to the *owner or occupant of the water power*, substantially the same rights as had been reserved to the owners of the mill in the deed he had received the day before. Taking into consideration, as we may properly do, the condition of the property and the circumstances of the parties, when this deed was executed, in order to ascertain what was intended by the reservation, it cannot be doubted that it was the understanding and intention of the parties to this deed that the grant should not be construed as a conveyance of the right to the water, that right being already claimed and then exercised by the defendant.

But it is said that in the original grant of the land to Schuyler in 1794, Mr. Van Rensselaer reserved the water in question, and that he continued to be the owner of the stream until 1837, when he conveyed it to Cushman and his associates, through whom the plaintiff acquired title. That the reservation in the deed to Schuyler embraced the stream in question cannot be denied. That Van Rensselaer or his grantees might lawfully have taken possession of it, at any time before his right had become barred by the lapse of time, is equally certain. But for nearly thirty years before the release to Cushman and his associates, there had been an uninterrupted enjoyment of this stream in the particular manner in which the defendant now claims the right to use it, by those from whom the defendant derives title. This enjoyment was open, notorious, and exclusive. Such an enjoyment is sufficient of itself to support a title. In analogy to the statute of limitations the law authorizes a grant from the real owner to be presumed without other proof than such actual and undisturbed enjoyment. "I take

it," said Lord Ellenborough, in *Bealy* v. *Shaw*, (6 *East*, 208,) " that 20 years' exclusive enjoyment of water, in any particular manner, affords a conclusive presumption of right in the party so enjoying it, derived from grant or act of parliament." The doctrine is, perhaps, still more accurately settled by Best, as follows : " Acting partly on the principle, that if ancient grants and acts had been drawn in question in the lifetime of the parties to them, they might have shown the truth of the matter, but chiefly for the furtherance of justice and the sake of peace, by quieting possession, the judges attached an artificial weight to the possession and user of such matters as lie in grant, and in process of time, established it as a rule that 20 years' adverse and uninterrupted enjoyment of an incorporeal hereditament, uncontradicted and unexplained, was cogent evidence from which the jury should be directed conclusively to presume a grant, or other lawful origin of the possession." (*Best on Presumptions of Law and Fact*, 102.) In *Magor* v. *Chadwick*, (11 *Ad. & Ellis*, 576,) it was held that the same rule was applicable to water flowing through an artificial channel.

But it is said, that Morgan, through whom the defendant derives his title, was not in a position to acquire any right, as against the original owner, by adverse possession and user. It is true that Morgan took the premises upon which the mill was erected, subject to the conditions, covenants and reservations contained in the deed from Van Rensselaer to Schuyler. So far as those conditions, covenants and reservations affected the land he purchased of Schuyler, he undoubtedly was estopped from setting up an adverse possession, as against Van Rensselaer or his grantees. He held in subserviency to the rights and privileges reserved to the original grantor. But, in respect to the premises not embraced in his deed, he owed no such allegiance. Like any other stranger to Van Rensselaer's title, he was at liberty to acquire the legal title to the water power by adverse enjoyment, or in any other lawful mannerr.

The facts in this case are abundantly sufficient to establish an adverse enjoyment of the water by the defendant and those under whom he holds, for the requisite periód. They also tend

very strongly, I think, to show that the possession had in fact some legal origin. As early as 1822, Morgan expended $1800 in the construction of a stone dam in the place of the log dam, which had become so much decayed as to require rebuilding. At the same time, he reconstructed the aqueduct at very considerable expense. It is not easy to account for these large expenditures upon the principles which ordinarily govern the conduct of business men, without supposing that Morgan thought, at least, that he had a legal right to use the water in the particular manner for which he had thus, at so great expense, provided. The careful reservation of the use of the water in this particular manner, in the deed of 1829, was also an unequivocal and public assertion of a claim to such right. The grant of the right, with a covenant warranting the title, in 1838, was a still more emphatic assertion of title. That there has been an exclusive and notorious enjoyment of the water for more than twenty years, is not in fact disputed. That this enjoyment was accompanied with such acts of ownership and claim of title as are sufficient to constitute an actual ouster and the occupation adverse, is also established. That there was nothing in the relation in which the defendant, or those through whom he derives title, stood to Van Rensselaer and his grantees which should preclude him from availing himself of this adverse enjoyment, has also been seen. The inferences to which these facts lead, stand wholly unrebutted by any contrary evidence. A case is therefore presented, in which, if the cause had been tried with a jury, it would have been the duty of the court to direct the jury "to presume a grant or other lawful origin of the possession." Taking the place of the jury, as I do, it is my duty to act upon the same presumption.

Having come to this conclusion, it is unnecessary that I should consider the other questions discussed upon the trial. Assuming that the release of Van Rensselaer, executed in 1837, was intended to operate as a grant of the stream of water, and that it did, in fact, operate to convey all the interest of the grantor in the water, it did but vest in his grantees, and, through the subsequent deeds, in the plaintiff, such title as

Van Rensselaer had at the time he executed the release, and that title had already become barred by adverse possession. The complaint must therefore be dismissed with costs.

Judgment accordingly.

N. B. This cause was tried at the Rensselaer circuit in January, 1851, without a jury, when the foregoing opinion was delivered. The plaintiff having appealed, the cause was argued before the general term in the third district, *Parker*, *Wright* and *Harris*, Justices, in December, 1852; and at the February term, 1853, the judgment was affirmed.