BOYCE, Appellant, v. MISSOURI PACIFIC RAILROAD COMPANY.

168   583
p168   599

### Division One, May 21, 1902.

1. **Right of Way:** TITLE: PERPETUAL EASEMENT. A railroad company has only an easement in the land for its right of way or tracks. The fee does not pass, but remains in the owner subject to the use. But the railroad has a perpetual and continuous easement in the land as long as it uses it for railroad purposes, and the owner is not entitled to use it so long as that public use lasts.

2. ———: EASEMENT: LIMITATIONS. Theoretically the statute of limitations does not apply to an easement, but by judicial interpretation the result is the same as if the statute did so apply. So that an adverse user of an easement for the period specified in the statute barring actions for the recovery of land, is now, by analogy, held to be a conclusive judicial presumption of a prescriptive right, by a "lost grant."

3. ———: ———: ———: KNOWLEDGE OF ADVERSE POSSESSION. Express acquiescence or actual knowledge is not necessary to establish a right to an easement by limitation. On the contrary, if the actual

owner does not ask legal aid to oust the trespasser within the time limited for bringing such actions, the law assumes that he had acquiesced in the adverse claim.

4. ———: ———: ———: ACQUIRED BY LIMITATIONS: CONSTITUTION. A railroad is not prohibited from acquiring a right of way over land by adverse use or limitations, by the provision of the Constitution which declares that private property shall not be taken for public use without just compensation.

5. Limitations: EFFECT: THEORY. The theory of the statute of limitations is that it does not affect the owner's right to the property, but simply destroys the remedy for the assertion of the right in court, and this it does for the purpose of quieting titles and preserving the peace of society.

Appeal from St. Louis City Circuit Court.—*Hon. H. D. Wood,* Judge.

AFFIRMED.

*Clinton Rowell* and *Joseph H. Zumbalen* for appellant.

(1)   A railroad company which locates its track upon land without the consent of the owner thereof, acquires, by its adverse use thereof for more than ten years, only an easement in the property.   Sugar Refining Co. v. Elevator Co., 82 Mo. 125; Const. 1875, art. 2, sec. 21; Hays v. Railroad, 62 Tex. 397.   (a) In order that an easement may be acquired in lands of another by continuous, adverse use, it must be shown that the owner had knowledge of and acquiesced in said use.   State v. Walters, 69 Mo. 465; State v. Proctor, 90 Mo. 334; Vaughan v. Rupple, 69 Mo. App. 583; Zimmerman v. Snowden, 88 Mo. 218; State v. Wells, 70 Mo. 637; American Co. v. Bradford, 27 Cal. 360; Richard v. Hupp, 37 Pac. 920; Sargent v. Ballard, 9 Pick. 251; Hannefin v. Blake, 102 Mass. 297; Wallace v. Fletcher, 30 N. H. 134; Smith v. Putnam, 62 N. H. 369; Jones on Easements, sec. 164.   (b) As the statute of limitations does not

apply to easements, ten years' adverse use and enjoyment is not a bar to the true owner, but merely evidence from which a jury may presume a grant.   Jones on Easements, sec. 161; Cooper v. Smith, 9 Serg. & R. 26; Parker v. Foote, 19 Wend. 312; Mayor, etc. v. Homer, Cowp. 102; Pitzman v. Boyce, 111 Mo. 387; French v. Marstin, 24 N. H. 440; Lanier v. Booth, 50 Miss. 410.   (2)   (a) The railroad company's use and possession was not adverse and exclusive until 1890 or later, because of plaintiff's ignorance thereof without fault on his part, and because of the concurrent use and occupation thereof by plaintiff's lessee.   Musick v. Barney, 49 Mo. 458; Key v. Jennings, 66 Mo. 367; Miller v. Rosenberger, 144 Mo. 292; Hunnewell v. Burchett, 152 Mo. 611; Elevator Co. v. Railroad, 135 Mo. 353.   (b) Plaintiff's right of entry did not accrue until 1890, less than ten years prior to the institution of the suit.   Doe v. Pyke, 5 Maule & S. 146; Mellor v. Watkins, L. R. 9 Q. B. 400; Eten v. Luyster, 60 N. Y. 252; Davenport's Case, 8 Coke 144; Railroad v. Smith, L. R. 2 Ch. D. 235; Krider v. Ramsay, 79 N. Car. 354; Hessel v. Johnson, 129 Pa. St. 173; McKenzie v. Lexington, 4 Dana (Ky.) 130.   (3) A railroad company can not acquire title by disseizin and adverse possession for the statutory period, because the Constitution prohibits the taking of private property for public use without compensation being first made to the owner.   McClinton v. Railroad, 66 Pa. St. 404; Baker v. Fales, 16 Mass. 520 .

*Henry G. Herbel* and *Martin L. Clardy* for respondent.

(1)   It may be conceded, although it has been held otherwise, that a railroad company which locates its track upon land without the consent of the owner acquires, by its adverse use thereof for more than ten years, only an easement in the property.   This court may not feel called upon in this case to determine the extent or character of the interest de-

fendant has acquired by an adverse user of the property in dispute. The question to be determined is, whether the plaintiff was entitled to the possession of the strip of ground in dispute at the time of the institution of this suit. (2) The proposition that it must be shown that the owner had knowledge of the use, and acquiesced therein, in order that an easement might be acquired in lands by a continuous and adverse holding, need not be denied. It is not, however, necessary to prove that the owner had actual knowledge of an adverse possession of his lands, if such possession was open and notorious, but, from the fact of such visible and notorious possession, the owner's knowledge thereof will be presumed. Key v. Jennings, 66 Mo. 356; Draper v. Shoot, 25 Mo. 203; Fugate v. Pierce, 49 Mo. 441; Turner v. Hull, 60 Mo. 271; Leeper v. Baker, 68 Mo. 407; Wilkinson v. Eilers, 114 Mo. 245; Scruggs v. Scruggs, 43 Mo. 142. "Defendant's adverse possession is not dependent on plaintiff's knowledge thereof." Miller v. Rosenberger, 144 Mo. 292. And the rule is the same whether the possession be of an entire tract of land or of a way or other easement over the land. Turner v. Railroad, 112 Mo. 542; Hargis v. Railroad, 100 Mo. 210; House v. Montgomery, 19 Mo. App. 179; Day v. Railroad, 20 A. & E. R. Cas. 364; Hoffman's Appeal, 118 Pa. 512; Washburn on Easements and Servitudes, p. 107. (3) It may be admitted that the statute of limitations, so far as real estate is concerned, applies only to actions for the recovery of land, and that it does not embrace actions in which the right to an incorporeal hereditament is involved, but, upon the wise principle of such statutes and in analogy to them, to quiet men's possessions and to put an end and fix a limit to strife, a rule is established that, after the lapse of the period mentioned in the statutes, a grant of an easement will be presumed. It is not true, as insisted by appellant, that ten years' adverse use and enjoyment do not constitute a bar to the true owner, but are merely evidence from which

a jury may presume a grant, in the sense stated by appellant. The presumption of title, arising from the uninterrupted enjoyment of twenty years, is conclusive evidence of a right. 3 Kent's Commentaries, 445; 2 Greenleaf on Evidence, 539; 2 Washburn on Real Property, 449; Tyler v. Wilkerson, 4 Mason 397; Turner v. Railroad, supra; Hargis v. Railroad, supra; House v. Montgomery, supra; Day v. Railroad, supra; Hoffman's Appeal, supra; Washburn on Easements and Servitudes, supra. (4) The acquisition of title by a railroad company by adverse possession for the statutory period, where the possession is taken without the consent of the owner, is not repugnant to section 21, article 2, Constitution. Organ v. Railroad (Ark.), 39 A. & E. R. Cas. 75; Lyles v. Railroad (Tex.), 39 A. & E. R. Cas. 59; Welsh v. Railroad, 19 Mo. App. 127; State v. Culver, 65 Mo. 610.

MARSHALL, J.—Ejectment for the north half of city block 3154, in the city of St. Louis. The petition is in the usual form. The ouster is laid as of January 1, 1893. The answer disclaims as to all except a strip fifteen feet wide running from north to south through the land, and asserts ownership thereto in the defendant. The case was tried without the aid of a jury, and judgment entered for the defendant, from which the plaintiff appealed.

In 1862, Mrs. Octavia Boyce, mother of the plaintiff, owned the whole of block 3154. On June 1, 1862, she leased the whole block to James B. Eads for a term of ten years, at an annual rental of $200, with the option for a renewal term for ten years more at a rental equal to six per cent of the value of the land, to be fixed by arbitration. The lease to Eads was never renewed. In 1876 Mrs. Boyce died, and in 1879 the block was partitioned between Mary E. Boyce and John O'Fallon Delaney, the former being allotted the north half and the latter the south half of the block. In 1868 Eads sublet the whole block to the Missouri Zinc Company, and that company

occupied it until April 19, 1880, when the Eads lease, and the sublease to the zinc company were surrendered to Mary E. Boyce and John O'Fallon Delaney, and were cancelled, and they, each for themselves, leased their respective parts thereof to the zinc company for a term ending May 1, 1890, and that company remained in possession under said leases until that time. Afterwards the property was rented to others. From 1862 to 1880, James M. Carpenter was the agent for the owners of the property and collected the rents and paid the taxes. From 1880 to 1890 Hartnett & Company, were the agents for the owners, collected the rents and paid the taxes. After that date the owners attended to renting the property themselves. In 1872 the Pacific Railroad Company, without color of title or authority of law, entered upon the property, took possession of the fifteen-foot strip, constructed a track upon it, which was known as and constituted a part of the Kirkwood connection or branch of that road, and that company, and its successor, the defendant, has ever since been in open, peaceable, continuous, uninterrupted possession of said strip, claiming it as of right and adversely to the world, and has paid taxes on it as a part of its Kirkwood branch. Mary E. Boyce did not have actual knowledge of the defendant's possession and claim until October, 1890, and never saw the property until 1898, and John O'Fallon Delaney did not have such actual knowledge until 1895. This suit was begun on March 6, 1897. The defendant's right rests entirely upon a presumption of a grant based upon prescription. The plaintiff asserts three propositions, under all and each of which she claims that she is entitled to judgment, to-wit: first, that under the Constitution of Missouri the defendant railroad company can only have an easement in the land covered by its right of way, the fee remaining in the owner subject to the use, and that the statute of limitations does not run in favor of a party having only an easement in land; second, that the land was continuously leased, and therefore the plaintiff could not law-

fully enter into the possession or challenge the right to possession claimed by the defendant, and, hence, the defendant's possession could only be adverse to the tenant's rights and was not adverse to the plaintiff's rights; and, third, that under the Constitution of Missouri a railroad company can not acquire an easement for a right of way by prescription or limitation, but can only do so by paying just compensation therefor to the owner or into court for the owner in a suit for condemnation, and of these in their order.

I.

Section 21, of article 2, of the Constitution provides: "That private property shall not be taken or damaged for public use without just compensation. Such compensation shall be ascertained by a jury or board of commissioners of not less than three freeholders, in such manner as may be prescribed by law; and until the same shall be paid to the owner, or into court for the owner, the property shall not be disturbed or the proprietary rights of the owner therein divested. The fee of land taken for railroad tracks without the consent of the owner thereof shall remain in such owner, subject to the use for which it is taken."

Even before the adoption of the present Constitution, this court held that in condemnation cases by a railroad for a right of way, the fee did not pass, but remained in the owner subject to the use. It was also held that an easement passed to the railroad, "giving it perpetual and continuous title so long as it used the land for the purpose for which it was taken, but, when the use was abandoned, then it would revert back to the owner of the premises." [Kellogg v. Malin, 50 Mo. 496.] And this, too, notwithstanding the statute then in force authorized the acquisition, by the railroad, by condemnation, of an "absolute estate in fee simple," for it was said that the

words "fee simple," used in the statute, were not employed in their technical sense.

Since the adoption of the section of the Constitution of 1875, quoted, this court has likewise held that a railroad company has only an easement in the land for its right of way or tracks. [Union Depot Co. v. Frederick, 117 Mo. 152; Railroad v. Clark, 121 Mo. 169.] But while the railroad does not acquire the fee, it does acquire a perpetual and continuous easement as long as it uses it for such purpose, and the owner of the fee is not entitled to use the land at the same time with the railroad company, but the company is entitled to the exclusive use, limited only as it is or may be by statute in that regard. Therefore, the term "easement" as employed in those cases was not used in its strict technical sense, but partakes rather of the meaning of an interest in the land, than of the original meaning given to the term "easement," that is, a right in common with the owner or others. [10 Am. and Eng. Ency. Law (2d Ed.), p. 400, and cases cited in notes.]

It is with this in mind that the first contention of the plaintiff, that the statute of limitations does not apply to easements, must be considered.

Originally in England, easements were said to lie wholly in grant. Easements are incorporeal hereditaments, and statutes of limitation were held to apply only to actions for the recovery of land. Afterwards the fiction of a "lost grant" was adopted by the courts. That is, the courts presumed from the long possession and exercise of right by the defendant, with the acquiescence of the owner, that there must have been, originally, a grant by the owner to the claimant, which had become lost. "It was called a lost grant, not to indicate that the fact of the existence of the grant originally was of importance, but to avoid the rule of pleading requiring profert." [Railroad v. McFarlan, 43 N. J. L. 605.] It was considered the duty of the court to enforce the fiction, "not, however, because either the court or the jury believe the presumed grant to

have been actually made, but because public policy and con-
venience require that long-continued possession shall not be
disturbed." [Jones on Easements, sec. 161, p. 138.] POLLOCK,
B., in the recent case of Bass v. Gregory, 25 Q. B. D. 481,
decided in 1890, said the fiction of "lost grant" has been
adopted by almost all civilized nations for the furtherance of
justice and the sake of peace. Formerly it was held to apply
only to cases where the defendant claimed a right to posses-
sion by prescription, that is that his right began at a period
beyond the "time whereof the memory of man runneth not to
the contrary." Lately in England and in most of the United
States the rule has been adopted that the period for acquiring
an easement in lands corresponds to the local statute of limita-
tions as to land. For it was said, "It would be irrational to
hold that an easement may not be acquired by the same lapse of
time required to confer title to the land by adverse posses-
sion." [Jones on Easements, sec. 160, p. 134, and cases cited
in notes.] And this is the doctrine ably announced by ELLI-
SON, J., speaking for the Kansas City Court of Appeals, in
House v. Montgomery, 19 Mo. App. 1. c. 179, after an ex-
haustive review of modern authorities.

Hence, while statutes of limitation do not directly apply
to actions in which easements or other incorporeal heredita-
ments are involved, still by judicial construction an adverse
user of an easement for the period specified in the statute barr-
ing actions for the recovery of lands, is now by analogy held to
be a conclusive judicial presumption of a prescriptive right, by
a lost grant. [Jones on Easements, secs. 161, 162, and cases
cited; 10 Am. and Eng. Ency. Law (2 Ed.), p. 426, and cas.
cit.] It is the accepted rule however, that, "the user, to per-
fect title by prescription to an easement, must be exercised by
the owner of the dominant tenement and must be open, peace-
able, continuous, and as of right." [Railroad v. Blooming-
ton, 167 Ills. 9; Conyers v. Scott, 94 Ky. 123; Swan v.
Munch, 65 Minn. 500; Hoyt v. Carter, 16 Barb. 212; Bushey

v. Santiff, 86 Hun 384; Costello v. Harris, 162 Pa. St. 397.]

This doctrine was recognized by this court in Pitzman v. Boyce, 111 Mo. 387, and it was there said, "And such adverse user for the statutory period will give origin to the rebuttable legal presumption of a grant, even though the use in its inception was a trespass." But it was not meant by this that the legal presumption of a grant could be rebutted or overcome by proof that the owner of the fee—the servient estate—had no *actual* knowledge of the claim to an easement, and did not *expressly* acquiesce in the dominant use. It was only intended that the presumption could be rebutted by showing that the use was by express permission, that the owner of the servient estate was under a legal disability and could not therefore give consent or legal acquiescence, or, in other words, by the interposition of any of the excusatory pleas that are open to a plaintiff in ejectment against a plea by the defendant of the statute of limitation.

So that although technically the statute of limitation does not apply to an easement, still by judicial interpretation the result is the same as if the statute did so apply. Under the first contention the plaintiff asserts the subcontention that the burden is upon the defendant to show that such exercise of such an easement was with the knowledge and acquiescence of the owner, and that in this case, so far from the defendant so proving, it appears that Mary E. Boyce did not know that the tracks were on the land until 1890, and John O'Fallon Delaney did not know that fact until 1895.

Theoretically the use and easement is with the knowledge and acquiescence of the owner as much as is the adverse possession of a defendant in ejectment. For the law presumes that every man knows the condition and status of his land, and if any one ousts him or trespasses upon his land or enters into possession and sets up an adverse claim thereto and the owner does not ask legal aid to dispossess him within the time limited for bringing such actions, the law assumes that the owner has

acquiesced in the adverse claim. That is, the statute of limitaton sets at rest all such questions unless they are properly presented for adjudication within the statutory period of limitation. In point of fact the owner, like these owners, may have had no actual knowledge and therefore did not expressly acquiesce, but the law implies knowledge and therefore consent. This is as true of claims to easements as it is to claims to the land itself. [10 Am. and Eng. Ency. of Law, p. 426.]

A like contention was made by the plaintiff in Miller v. Rosenberger, 144 Mo. l. c. 300, in an ejectment suit, where title by limitation was set up by the defendant, and this court, speaking through BURGESS, J., held that an instruction embodying such an idea was erroneous saying: "If defendant's possession was adverse, open and notorious, under claim of title to the land, it makes no difference whether plaintiff in fact knew of such adverse holding or not. The law did not impose upon the defendant, under the circumstances disclosed by the record in this case, the duty of notifying plaintiff of the character of his possession or of advertising it to the world. It was sufficient if his possession was adverse, open, notorious, under claim of ownership of the property for the period of ten consecutive years, next preceding the institution of this suit." And this has long been the rule in this State, whether the claim asserted be to an easement or to the whole fee simple, especially where the nature of the possession is necessary notice of the claim. [Scruggs v. Scruggs, 43 Mo. 142; Fugate v. Pierce, 49 Mo. l. c. 446-7; Key v. Jennings, 66 Mo. 356; Leeper v. Baker, 68 Mo. l. c. 405; Hargis v. Railroad, 100 Mo. 210; Turner v. Railroad, 112 Mo. 547; Wilkerson v Eilers, 114 Mo. l. c. 254.]

The conclusion of BLACK, J., in Turner v. Railroad, 112 Mo. l. c. 547, is peculiarly applicable to the question under consideration. That learned jurist said: "The proof is clear and undisputed that the company built its tracks across the

Vol 168 mo—38.

strip of land in suit in 1868 or 1869. It has from that time to the commencement of this suit occupied and used the land for a right of way, and this use has been open, exclusive and without interruption. The suit was commenced in 1883. No witness, it is true, testified in so many words that the defendant claimed to own the land occupied by its tracks; but there is no evidence showing, or anything tending to show, that the railroad company took or entered into possession by permission of or license from the plaintiffs, or under any contract with them. There is and can be no pretense of any contractual relations between the plaintiffs and defendant. This being so, the fact of actual, open and continuous possession by defendant is of itself sufficient evidence that the possession was adverse to the plaintiffs. The defendant's case did not call for any other or further evidence."

Likewise the rule stated by BURGESS, J., in Wilkerson v. Eilers, 114 Mo. l. c. 254, is appropriate to the case at bar. He said: "It is well-settled law that in order to bar the true owner of his right to the possession of his land where the occupant holds without color of title, as in the case at bar, his possession must be open, notorious, continuous and adverse for the period of ten years, claiming to be the owner thereof. [Bowman v. Lee, 48 Mo. 335; Fugate v. Pierce, 49 Mo. 441; Nelson v. Brodhack, 44 Mo. 596.] If defendant's possession of the land had been adverse to plaintiff, open and notorious, and under claim of right thereto for ten years prior to the time this suit was brought, plaintiff's right of action was barred whether he knew the facts or not. [Scruggs v. Scruggs, 43 Mo. 142.] Actual, continued, visible, notorious and hostile possession is tantamount to a claim of ownership. [Shearer v. Middleton, 88 Mich. 621.]"

The principles of these cases apply as well where only an easement is claimed as where the title to the land itself is in controversy. Some easements are of such nature and character that they may be enjoyed at the same time by several per-

sons, and the owner may also use the surface of the land. In some cases the nature of the use does not necessarily disclose the identity of the person using the land, nor does it disclose or mean that an exclusive use or easement is claimed. But in the case at bar no such uncertainties are present. The railroad track was permanently laid upon the land, thereby giving notice to the owner of the nature of the use and the exclusive character of the claim, and also affording easy means of identifying the occupant and claimant. It does not appear that the tracks were laid under a contract or license from the owner, the tenant or any one else. They were laid as of right in 1872 and have been used as a part of the Kirkwood connection ever since, which was for a period of twenty-five years before this suit was brought. The possession was therefore open, actual, visible, notorious, continuous, hostile, adverse, and under claim of right, without color of title. If it had been an individual who was thus shown to have been in possession, there could and probably would have been no claim but that the original, tortious and wrongful possession had ripened into a title by limitation, whether the true owner actually saw or knew of such possession or not. By analogy, upon the theory of an implied lost grant, the defendant has acquired by prescription an easement for a railroad right of way over the land, which entitles it to retain the exclusive possession as long as it continues to use the land for such purpose.

## II.

The second contention of the plaintiff is that the land was continuously leased, and therefore the plaintiff could not lawfully enter into the possession or challenge the right to possession claimed by defendant, and hence, the defendant's possession could only be adverse to the tenant's rights and was not adverse to the plaintiff's rights.

In an exceedingly interesting, able and exhaustive brief,

the plaintiff supports this contention by copious references to decisions as to the rights of tenants and subtenants as against the landlord and as against strangers to the title. But there is a link missing in the chain of connection between the principles established by the cases cited and the facts in evidence in this case. That is, it does not appear that the premises were continuously under lease, and therefore the plaintiff had a right of entry more than ten years before the institution of this suit, which was therefore the date at which the cause of action accrued to the plaintiff and from which date the limitation or prescription or presumption of a grant began to run. The facts are briefly, that in 1862 Mrs. Boyce leased the property to James B. Eads for a term of ten years, with a privilege of a renewal for ten years more. No other lease was ever made and no renewal was ever made before Mrs. Boyce's death in 1876. In 1868 Eads sublet to the Missouri Zinc Company, which, of course, could only be for his unexpired term, and under his privilege for a renewal, which privilege, however, was never exercised. In 1872 the tracks were laid on the land. After the expiration, in 1872, of the Eads lease, the zinc company continued to occupy the land until Mrs. Boyce's death in 1876. That company, or Eads under whom that company claimed, was therefore a mere tenant from month to month under the statute, from the expiration of the lease thenceforward as long as Mrs. Boyce lived, and thereafter until after the partition of the land in 1879, when the plaintiff and Delaney required a surrender and cancellation of the Eads lease, and of all rights of the zinc company as subtenants, and leased, each for themselves, their respective shares to the zinc company for a new, different and increased rental, for a new term from May 1, 1880, to May 1, 1890. Hence, a right of entry not only accrued to the plaintiff in April, 1880, but such entry actually occurred, the old lease and rights of the old tenant and subtenant were surrendered and cancelled, and a new lease, right of possession and rental

was effected with a new tenant.    This was on April 18, 1880, which was seventeen years before this suit was brought.

If, therefore, the plaintiff's contention be conceded that while property is leased the statute of limitations does not run in favor of a stranger who goes into the possession as against the landlord, but such possession affects only the tenant's rights, still this plaintiff can not effectively invoke such a rule, because this plaintiff was entitled to possession in 1880, the defendant was actually in possession at that time, this plaintiff waited seventeen years thereafter before beginning this suit, and therefore a right has now accrued to the defendant to retain the possession as against the owner who failed to preserve and properly assert his rights within the statutory period prescribed.    But this concession is made only for the purposes of argument in this case, and must not be taken as the assertion of such a principle by this court.

## III.

The last contention of the plaintiff is that under the Constitution of Missouri (sec. 21, art. 2) a railroad company can not acquire an easement for a right of way by prescription or limitation, but can only do so by paying just compensation therefor to the owner or into court for the owner.

The gist of this contention is that because section 21 of article 2 of the Constitution provides that private property shall not be taken for public use without just compensation, therefore, a railroad company can not acquire an easement by prescription or limitation.

If this be the true construction to place upon the provision of the Constitution quoted, then it logically follows that no individual can acquire title by limitation to the property of any other individual, for section 20 of article 2 of the Constitution provides that private property shall not be taken for private use at all.    Yet in spite of this constitutional provi-

sion, the reports of the decisions of this court are full of cases where one individual has taken the property of another individual and has acquired complete title thereto by limitation.

So, too, cases have been decided by this court where railroad companies have taken private property for a right of way, and by adverse possession for the statutory period of limitation have acquired title or an easement (it is immaterial what it is termed) by limitation, or by means other than by direct purchase or condemnation. In Doyle v. Railroad, 113 Mo. 286, the trespass was waived and the suit was for the value of the land taken, and it was held that when that sum was paid it would operate to vest an easement in the land in the defendant, "as effectually to all intents and purposes as if condemnation proceedings had been conducted."

In Turner v. Railroad, 112 Mo. l. c. 547, the defendant rested its claim entirely upon limitation and that claim was sustained by this court. So, too, the same right was conceded, on principle, to a railroad company in St. Louis v. Railroad, 114 Mo. l. c. 23, although it did not avail in that case because the statute of limitations did not run against the city of St. Louis.

In short, the theory of the statute of limitations is that it does not affect the right but simply destroys the remedy for the assertion of the right in court, for the purpose of quieting titles and preserving the peace of society. There is nothing inconsistent between such statutes and such decisions and the provisions of the Constitution, for the Constitution simply offers protection to private rights to all such as ask its aid, while the statute of limitation and the decisions simply require the aid of the law to be reasonably invoked, and refuse aid to those who have not tried to help themselves at a proper time.

This results in holding that the judgment of the circuit court is right, and, hence, it is affirmed. All concur.