(78 Misc. Rep. 518.)

HUTCHINS et al. v. LAVERY et al.

(Supreme Court, Trial Term, Franklin County. December, 1912.)

1. WATERS AND WATER COURSES (§ 154*)—PRESCRIPTIVE RIGHTS—WATERS OF SPRING.

In an action to restrain defendants from using through pipes the waters of a spring, a defendant, having used the water under grants of a water right openly under claim of right for nearly 20 years, had acquired the right to divert such waters by prescription.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 167–173; Dec. Dig. § 154.*]

2. WATERS AND WATER COURSES (§ 156*)—ACTION TO ENJOIN USE OF WATER—EVIDENCE.

Where an agreement granted to certain parties the surplus waters of a spring, to one of them to use the water at his farm and for cooling milk at a butter factory, and to the other the right to the surplus water from such butter factory above what is necessary to operate the factory, a subsequent conveyance by one of the parties of a right to a defendant to use a portion of the water on a farm which was not a part of the farm of the original grantee conveys no right to the use of the water on such farm.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 158, 174–183; Dec. Dig. § 156.*]

Action by Putnam W. Hutchins and others against James V. Lavery and others for an injunction. Judgment for defendant Lavery, and against defendants Drury.

Cantwell & Cantwell, of Malone, for plaintiffs.
Main & O'Neil, for defendant Lavery.
Bryant & Lawrence, of Malone, for defendants Drury.

VAN KIRK, J. This action is brought to restrain defendants from their present use of water conducted from a spring on the George H. Williamson farm through pipes and pump logs. The Muzzy spring is the principal source of a brook which flowed through the George H. Williamson farm and through the lands of the plaintiffs. On the George H. Williamson farm was the "Chapman spring," which discharged its waters into the brook running

from the Muzzy spring. In or about 1872 a wooden curbing was placed in the Chapman spring, and the waters of this spring were used in part through two hydraulic rams to supply water for the buildings on the George H. Williamson farm and an adjoining farm. In October, 1882, George H. Williamson entered into the agreement in evidence, by the terms of which he conveyed all the surplus waters of said spring, above that sufficient to supply the two rams, to Henry R. Williamson, Sidney Hinman, and Alden King, their heirs and assigns forever; and the agreement specifies the rights that each of these grantees shall have in said surplus waters. The right was granted to build a reservoir or curb at said spring and to lay a pipe therefrom. This line of pipe was laid to the Henry R. Williamson buildings, to the butter factory, and from thence by a half-inch pipe to the farm of Alden King, where it was used at the farm buildings and also at the Manson house. With the pipes so laid the water has been used continuously at the several places mentioned until June, 1911, except that the butter factory was destroyed by fire about three years ago and the water has not since been there used. During this time the waters from the spring, not used through the pipes and rams, have gone into the brook; also the waters at the factory not conducted to the Lavery place have gone into the brook. The discharge from the Muzzy spring was in amount about twice as much as the discharge from the Chapman spring. The plaintiffs are riparian owners along the brook below the defendants, and below any of the parties who have used water through this pipe.

In March, 1895, Alden King conveyed part of his farm to James V. Lavery, the defendant, together with all his right in the Chapman spring, excepting and reserving the right to take water from the pipe for the Manson place. In June, 1911, James V. Lavery and wife conveyed to the defendants Ella H. and George Ladd Drury the right to attach a half-inch pipe and take water for the use of the farms and buildings belonging to Drury, under certain restrictions and conditions. The Drury farm was no part of the King farm. In pursuance of this agreement the half-inch pipe, leading from the bridge at the highway, was replaced with an inch pipe leading to a point on the Lavery farm, where two half-inch pipes were connected with the inch pipe, one leading to the Lavery buildings, and one leading to the Drury buildings. Whatever rights the defendants have to the use of the water from the Chapman spring (1) are derived by prescription, or (2) belong to them as riparian owners along the brook.

[1] The grantor, George H. Williamson, in the instrument of October, 1882, although he owned the spring—that is, the lands around it—had only the right and title of a riparian owner; that is, in this case, the right to use on his farm the spring water for household and stock purposes. Waffle v. Porter, 61 Barb. 130. When he attempted to convey "all the surplus waters," he conveyed the same subject to the rights of lower riparian owners. 40 Cyc. 628. A right to divert the water of a stream or spring may, how-

ever, be acquired by prescription (Id. 608; Hoyt v. Carter, 16 Barb. 212, affirmed Id. 221, note; Ely v. State of New York, 199 N. Y. 213, 92 N. E. 629; Eckerson v. Crippen, 110 N. Y. 585, 18 N. E. 443, 1 L. R. A. 487); and, as conceded by plaintiffs, the grantees of water rights in said instrument having used those rights openly, notoriously, and continuously under claim of right under said grant until June, 1911, each had acquired the right to use the water in the manner and to the extent each so used it. There is no evidence in the case on which the court can find that, since June, 1911, Mr. Lavery has used more water at the farm buildings than was used there before 1911. Before and since June, 1911, he has used sufficient for his house, barn, and stock purposes. The fact that Lavery has substituted an inch pipe for part of the old half-inch pipe is no wrong to the plaintiffs, since he is not drawing more water than he drew before. Casler v. Shipman, 35 N. Y. 533. The defendant Lavery is also a riparian owner; but, as that gives him the right only to use the waters for house and stock purposes, he has no further right as riparian owner than he has acquired by prescription. The plaintiffs are, therefore, not entitled to any restraining order as against him.

[2] The defendant Drury has not the right to use the waters from this spring. A more careful examination of the agreement of October, 1882, will disclose this. While this agreement granted to Henry R. Williamson, Hinman, and King, and to their heirs and assigns, forever, all of the surplus water of the spring above that necessary for the two rams, in its later provisions it defines the specific rights of each grantee. The grantee Henry R. Williamson is to have the right to use the water at his farm; the butter factory may use the water for "cooling milk and other purposes connected with the manufacture of butter," but not to drive the water wheel; the grant to King is "the right to take and convey the waste or surplus water from the said Excelsior butter factory, over and above what may be necessary to properly and advantageously operate the said factory, in pipes or pump logs to his own dwelling house and farm." The right that King and Lavery have acquired by prescription is not an undivided interest in the surplus water of the spring, but is a right, within the limits above quoted, to take the surplus or waste water from the butter factory; and, within that limit of claim or right, he has acquired the right to use a quantity of water equal to that which he has actually used at the King farm buildings and nothing more. Title by prescription is measured by the extent of the possession or use. Hall v. Augsbury, 46 N. Y. 622, cited 199 N. Y. 219; 40 Cyc. 700. Lavery, therefore, had no right or title to convey to Drury to use water at Drury's farm, which was never a part of the Lavery farm, and on which the spring water had never been used, while Lavery was enjoying his right to the spring in full. Drury, therefore, acquired no right to use the spring water by said Lavery deed of June 2, 1911. The defendants Drury are the owners of the butter factory and all the water rights belonging thereto. They acquired this right after this

action was begun, and did not rely upon any water rights acquired with the factory lot when the half-inch pipe was installed under the Lavery deed. Whether or not the prescriptive right acquired to use water from this spring at the factory lot (which does not touch the brook) is a right to use solely upon the factory lot, or whether it is a right to use the quantity of water acquired in connection with that lot for any purpose, I do not think that the defendants Drury can protect themselves under this deed. It does not appear that the factory had the right to, or did, consume any water. It does appear that the water used at the factory was returned to the brook before the brook reached plaintiffs' land. That a three-quarter inch pipe ran to the butter factory does not mean that any water was consumed thereon; and, so far as the evidence shows, the owner of the butter factory had no right to any other use of the water than to detain it for temporary use. If the defendants Drury claim the right to use water under the deed to the factory lot, they must show that some appreciable quantity of water under this deed could be consumed upon the factory lot. Nor has Drury a right to use this spring water as a riparian owner. When this action was begun he did not own any of the lands adjoining the brook. On June 18th Mrs. Williamson granted him a strip of land, three rods wide, extending from the center of the highway and running along the highway from Drury's farm to the factory lot. Outside of the highway, therefore, this strip is very narrow. Mrs. Williamson has reserved the right to pass over this land as she sees fit, and she has testified that the grant was made to Drury under the agreement that he would reconvey it upon demand. Under the circumstances the court cannot uphold his right as a riparian owner. The transaction is too apparently one to secure a temporary success in this suit.

Plaintiffs therefore are entitled to a judgment restraining the defendants Drury from drawing water through the said pipe from this spring. But, while this is true, the plaintiffs have not furnished evidence upon which the court is able to determine what, if any, damage has been done to them by these defendants. Drury is drawing a very small amount of water; my recollection being that by actual measurement he is drawing one gallon per minute. This quantity of water returned to the spring, which is a long distance above the plaintiffs' farms, if the brook was otherwise dry, would hardly furnish water down the course of this brook. Beginning with the year 1908, Franklin county has been afflicted with very serious droughts. Streams and springs which had not been dry before dried in the seasons of 1911 and 1912. The whole Muzzy spring is not sufficient to supply water to plaintiffs' farms. The height of the water in the Chapman spring and curb is not instructive. The water has never overflowed the curb, however little was being used through the pipes. The spring and the curb are in soft, marshy land. It does not appear that the curb catches all of the water from the underground currents supplying the spring, nor does it appear that, when the water has reached a certain height

in the curb, it is not relieved by a discharge under the curb. Nor is the fact that the water at the Drury and Lavery farms fills a well 30 feet deep within 3 feet of its top instructive. The fact that the water remains in these wells at about a uniform height simply means that the water seeps out from the well underground at practically the same rate at which it is fed in. Nor do we know within what length of time these wells were filled by the overflow from the pipes. There is less pressure at the Henry Williamson place, but we are not informed that the actual use there is less. It satisfies the same needs as before. Nor are we informed how much water has been, or is now, used at the Manson place. But, Drury having wrongfully used the water, the plaintiffs, having sued for the injury, are entitled to at least nominal damages. Hall v. Augsbury, 46 N. Y. 622, 625. The plaintiffs are therefore entitled to judgment against the defendants Drury, restraining them from using the water from this spring through the said pipe, with $1 damages, together with costs.

The defendant Lavery is entitled to a dismissal of the complaint; but, this being an equity action, and the evidence showing that Lavery had conveyed to Drury, and therefore was a party to a wrongful act, costs are not allowed to the defendant Lavery.

Judgment accordingly.