GERMAN EVANGELICAL PROTESTANT CONGREGATION OF THE CHURCH OF THE HOLY GHOST et al. v. FREDERICK SCHREIBER et al., Appellants.

Division One, March 1, 1919.

1. **QUIETING TITLE: Effect of Decree Upon Others.** The object of the statute (Sec. 2535, R. S. 1909) is to ascertain and determine the title to the land as between the parties to the suit, and vest it in the one who has title superior to that of the other, whether or not either has a title that is good as against the world.

2. ———: ———: **Conveyance in Trust: Right of Reversioners: Objections for Trustees.** Where land was conveyed to trustees to be held for the benefit of a certain religious congregation for the purpose and uses of a cemetery, and said congregation was afterwards incorporated, and only the heirs of the grantor appeal from a judgment, in the suit to quiet title brought by the congregation, investing the title in the church corporation, the only question for determination is whether the judgment deprived said heirs of any

277 Mo.—8

interest or estate reserved to them by the terms of the deed to the trustees. If the language of the deed reserved to them no right of re-entry they are not aggrieved by the judgment vesting the title in the church corporation, nor can they complain that there was no formal deed from the trustees to the corporation, nor is it necessary to review the correctness of the judgment with reference to the rights of the heirs of the original trustees.

3. **CONVEYANCE: Reversion: Condition Subsequent.** A deed may contain a condition subsequent authorizing a reversion to the grantor or his heirs without being stated in express words, but the deed as a whole, together with the circumstances attending its execution, must demonstrate that the grantor intended a reversion upon a subsequent breach of a lawful condition. The rule is that estates once vested in fee will not be uprooted except upon proof of the happening of a lawful condition attached to a continuance of the estate by the terms of the deed, and further proof that it was the intention of the grantor in making the conveyance that the estate should revert when the condition ceased to exist.

4. ———: ———: ———: **For Cemetery Purposes: Cessation of Uses.** The grantor bought a parcel of ground in a city and six months later, for nearly twice what it had cost him, conveyed it to trustees elected by a church organization, by a deed, otherwise a fee simple absolute, which contained this clause: "To have and to hold unto the said parties of the second part and unto their successors in office in trust for the benefit of their said congregation for the purposes and uses of a graveyard, burying-ground or cemetery, forever and for no other purpose, foreign or adverse to the one mentioned, whatsoever." Lots in the cemetery were sold to purchasers, who received certificates showing an equitable but not a legal title. In the court of time a business and residence section grew up around the cemetery, and the city by ordinance withdrew it from the list of cemeteries in which interments would be "recognized and authorized as legal." Thereupon disinterments and removals were rapidly made by relatives of decedents. *Held* that the fact that the grantor received the full value of the land as a consideration for the deed is not to be ignored, and there being no provision for a reverter expressed and nothing in the language used or the circumstances to impute to either party to the deed an intention that a breach of the condition should inure to the grantor, his heirs have no right to a reversion.

5. ———: ———: ———: **Further Use Prevented Without Fault of Grantee.** Where a condition subsequent becomes incapable of performance without fault of the grantee or from a legal obstacle, it cannot defeat the fee granted or work a reversion to the grantor. Where land was conveyed to trustees of a religious con-

gregation for uses as a cemetery, and the city by valid ordinance has prohibited its further use as a burying-ground, the condition is discharged, and there can be no reversion to the grantor or his heirs.

Appeal from St. Louis City Circuit Court.—*Hon. Thomas C. Hennings*, Judge.

AFFIRMED.

*A. W. Wenger* and *John Cashman* for appellants.

(1) The petition fails to state facts sufficient to constitute a cause of action or to entitle the plaintiffs to the relief sought. The petition expressly states that neither of the plaintiffs after being incorporated ever received any conveyance of the land from the trustees of the church congregation nor from the congregation. (a) A voluntary religious church association or congregation of people by simply forming a corporation by or among some of its members does not thereby convey any title or interest in any of its real estate to the corporation so formed. Evangelical Church v. Schreiber Heirs, 187 S. W. 845; Catholic Church v. Tobbein, 82 Mo. 418; Frank v. Drenkhahn, 76 Mo. 508; Kansas City v. Scarritt, 169 Mo. 482; Lilly v. Tobbein, 103 Mo. 477; Klix v. Polish Church, 137 Mo. App. 347. (b) The petition is otherwise fatally defective in that it recites provisions from the deed from Johan Schreiber, which shows that he only conveyed a limited, determinable easement, which was terminated by the voluntary abandonment of the use specified in the deed, to-wit, a cemetery. Allen v. Wabash Railroad, 84 Mo. 651; Price v. Thompson, 48 Mo. 365; Railroad v. Frowein, 163 Mo. 1; Campbell v. Kansas City, 102 Mo. 326; Board of Regents v. Painter, 102 Mo. 464; Cummings v. St. Louis, 90 Mo. 259. (2) The trustees of the church congregation and the church congregation and all persons claiming under or through either having voluntarily abandoned the land in question as a cemetery, the heirs of the grantor immediately became

vested with a fee-simple title therein and were and are entitled to a decree so determining and adjudging the title in and to them under Sec. 2535, R. S. 1909. Union Cemetery Association v. Kansas City, 252 Mo. 466; Kansas City v. Scarritt, 169 Mo. 482; Campbell v. Kansas City, 102 Mo. 326; Cummings v. St. Louis, 90 Mo. 259; Railroad v. Frowein, 163 Mo. 1; Reynolds v. Reynolds, 234 Mo. 144; Allen v. Wabash Railroad, 84 Mo. 651; Price v. Thompson, 48 Mo. 365; Reed v. Stouffer, 65 Md. 236; University Society v. Dugan, 65 Md. 460; Scott v. Stipe, 12 Ind. 74; Young v. Board of Commissioners, 51 Fed. 585; Church v. Alexander, 20 Ky. Law Rep. 391; Gray v. Blanchard, 8 Pick. 284; Jackson v. Pike, 9 Col. 73; Police Jury v. Reeves, 6 Martin's Red. (La.) 221. (3) The court will give that construction to the Schreiber deed which the congregation had adopted and given to it themselves as shown by the certificates issued to purchasers of burial lots. Each certificate expressly recites that lots sold in the cemetery are sold "subject to the conditions and restrictions contained in the deed of said Schreiber to the congregation." Sedalia Brewing Co. v. Sedalia Water Works Co., 34 Mo. App. 49; Patterson v. Camden, 25 Mo. 13; Dobbins v. Edmonds, 18 Mo. App. 307; Railroad v. Frowein, 163 Mo. 1; St. Joseph Union Depot Co. v. Railroad, 131 Mo. 291; Ridge v. Transfer Co., 56 Mo. App. 133; Burnett v. McCluey, 78 Mo. 676; Jones v. De Lassus, 84 Mo. 541. (4) The fact, if it be a fact, that a valuable consideration may have been paid by the grantor does not defeat his or his heirs' right to re-enter and own the granted premises after the same have been abandoned by the grantee for the uses specified in the deed. The owner of real estate may make such disposition of it as he pleases. If he concludes to convey it to another upon condition or to convey a limited estate, it is in his power to impose such conditions as he chooses, or to convey such estate as he feels disposed to, and if a grantee accepts a deed with conditions or provisions

which amount to a condition, or accepts a deed conveying a limited estate with special provisions, then that is the contract between the parties and· both must abide by it.  Reed v. Stouffer, 65 Md. 236; University Society v. Dugan, 65 Md. 460;  Scott v. Stipe, 12 Ind. 74;  Young v. Board of Commissioners, 51 Fed. 585. (5) The plaintiffs are bound by the averments of ownership stated in their petition.  The petition expressly declares that from the date of the incorporation of the cemetery, in 1865, "said cemetery corporation has been by said congregation considered and taken to be the owner of said real estate, and treated as such by said congregation."  The incorporation of the church was not intended to, and did not, alter this view, for in sections 7 and 32 of the church articles of incorporation the continued existence of the charter of the cemetery corporation is expressly recognized.   The plaintiff church corporation cannot be heard to deny the effect of its own solemn pleading and its recitals in its articles of incorporation and claim now that it, and not the cemetery corporation, is owner. A party is absolutely concluded by the averments of their pleading. Otrich v. Railroad, 154 Mo. App. 437; Weil v. Posten, 77 .Mo. 284;  Knoop v. Kelsey, 102 Mo. 291;  Davis v. Bond, 75 Mo. App. 32.   (6) A grant of land to a religious body for the use and purpose of a church and burying ground is a grant for that special purpose, and when the purpose fails the land reverts to the grantor or his heirs.  Gumbert's App., ·110 Pa. 496 (1A, 437).   A cemetery does not lose its character, as such, because further interments in it has ceased, or become impossible.   Campbell v. Kansas City, 102 Mo. 326; Dangerfield v. Williams, 26 App. (D. C.) 508;  Tracy v. Bittle, 213 Mo. 302;  Kansas City v. Scarritt, 169 ·Mo. 471;  Roundtree v. Hutchinson, 57 Wash. 414, 27 L. R.· A. (N. S.) 875;  May v. Belson, 10 Ont. L. 686; Com. v. Wellington, 7 Allen, 299;  Stockton v. Newark, 42 N. J. Eq. 531;  Hunter v. Sandy Hill, 6 Hill (N. Y.) 407.  (7) Where land is conveyed for a graveyard or

cemetery it does not lose that character by mere disuse. Tracy v. Bittle, 213 Mo. 302; Com. v. Wellington, 7 Allen, 299; Campbell v. Kansas City, 102 Mo. 326. And where the land is conveyed in trust for a burial place, the trust is not to be considered as at an end when the last body which can be buried in it has been deposited. Stockton v. Newark, 42 N. J. Eq. 531. Where premises have been conveyed for graveyard purposes they remain subject to that use so long as bodies remain buried there, and until they are removed by public authority or by friends or relations, and this is so, although the tract has been grossly neglected. Bitney v. Trim, 73 Or. 257. And where land has been conveyed to a village or city as a public cemetery it is not competent for the authorities, in their character of trustees, to abandon the use and thereby defeat the beneficial interest of the public therein. Kansas City v. Scarritt, 169 Mo. 471; Campbell v. Kansas City, 102 Mo. 326; Newark v. Watson, 56 N. J. L. 667; Gumbert's App., 110 Pa. 496; Stockton v. Webber, 98 Cal. 433. (8) Where land is conveyed on condition subsequent, express or implied, the land must be held and used in strict conformity to the terms of the conveyance, and for the use declared, otherwise the heirs of the grantor will become reinvested with the title. Reed v. Stouffer, 56 Md. 236. (9) Ordinance 21128 is void in that it arbitrarily undertakes to exclude the "Pickers Cemetery" from a right it previously enjoyed to make interments of human bodies therein after the Board of Health of St. Louis had officially determined that said cemetery did not constitute a nuisance, and there being no evidence before the court that the cemetery was a public nuisance, the ordinance negatively undertaking to prevent interments in cemeteries, is void. Union Cemetery Association v. Kansas City, 252 Mo. 466. A cemetery is not a nuisance per se. Harper v. City of Nashville, 70 So. 1102. Said ordinance is further void for the reason that it undertook to permit other cemeteries situated within the limits of the City of

St. Louis to continue to make interments while it undertook to deny said privilege to the Pickers Cemetery and thereby denied to said cemetery the equal protection of the laws and violations of the Constitution of Missouri .and of the United States. Union Cemetery Association v. Kansas City, 252 Mo. 466; State v. Julow, 129 .Mo. 163; State v. Walsh, 136 Mo. 400; St. Louis v. Spiegel, 90 Mo. 587; St. Louis v. Russell, 116 Mo. 248; Hannibal v. Tel. Co., 31 Mo. App. 23. (10) The courts of Missouri have the power to inquire into the reasonableness of ordinances, though duly enacted by proper authority of any municipality and are not compelled to accept such enactments as a final determination that the thing commanded or prohibited may be a necessary or reasonable exercise of police power. The courts may go. deeper and beyond the motives for the exercise of such power and the reasonableness of the power undertaken to be enforced and declare an ordinance where it is unreasonable and oppressive and discriminates in favor of one party to the detriment of other parties. Union Cemetery Association v. Kansas City, 252 Mo. 466; American Tobacco Co. v. St. Louis, 247 Mo. 374. (11) The plaintiffs' petition is bottomed on what is now Sec. 2535, R. S. 1909, and as the petition shows on its face that neither of the plaintiffs had any title or interest in the land in question, their action must fail for the reason that that statute does not empower the court in the proceeding under it to create an interest or estate in a party suing under the statute, but can only define and adjudge to that party such interest or estate as the party already has at the time of institution of suit. Seidel v. Cornwell, 166 Mo. 51; Howard v. Brown, 197 Mo. 36; Graton v. Land & Lumber Co., 189 Mo. 322; Felker v. Breece, 226 Mo. 320; Maynor v. Land and Timber Co., 236 .Mo. 722. (12) The same rule applies in suits to quiet title under Sec. 2535, R. S. 1909, that applies to suits in ejectment: that is, the plaintiff must stand upon the strength of his own title and not upon the

weakness of his adversary's title. Harrison Machine Works v. Bowers, 200 Mo. 234; Gardner v. Robertson, 208 Mo. 605; Charles v. White, 214 Mo. 187; Wheeler v. Reynolds Land Company, 193 Mo. 279.

*Geo. W. Lubke* and *Geo. W. Lubke, Jr.,* for respondents.

(1) The Schreiber heirs have no interest or ownership of any kind now or prospective, in or to the realty in controversy. Their ancestor sold and conveyed it to the trustees of the congregation in fee simple and without any reservation and was paid his full price and profit for it. No abandonment or change in the use specified in his deed can give them a right of re-entry to the property. Hand v. St. Louis, 158 Mo. 204; Commissioners v. Young, 59 Fed. 96; Academy v. Clemens, 50 Mo. 167; Goode v. McPherson, 51 Mo. 126. The doctrine of reverter applies only to a donation for a charity, not to an outright sale and conveyance for a valuable consideration. McRoberts v. Moudy, 19 Mo. App. 26; Gibson v. Armstrong, 7 B. Mon. 489. The reason for the rule is that the grantor has parted with all his title at the time he made the conveyance and the grantee having acquired the whole title, any limitation upon his right to convey it is opposed to public policy. Kessner v. Phillips, 189 Mo. 525. The trustees named as grantees in the Schreiber deed had no active duties imposed on them. The congregation as beneficiary was charged with these and has performed them and now asks the court's aid in continuing to so do. And when the congregation became an incorporated body its right and power to hold the title to real estate without the intervention of trustees also became complete. The statute of uses may then have passed the title to the incorporated body. Roberts v. Mosely, 51 Mo. 282; Christian Church v. McGowan, 62 Mo. 288; Frank v. Drenkhahn, 76 Mo. 508; Lilly v. Tobbein, 103 Mo. 488. But because the Schreiber heirs asserted title

by reversion to the property the plaintiff congregation was obliged to institute this suit to have it definitely determined for whom the trustees named in the deed held the title, and also to obtain the directions of the court as to the future use or disposition of the property if it belonged to the plaintiff congregation and was charged with a trust. And the decree of the court correctly vested the title in the congregation as prayed in the petition of the plaintiff. (2) The so-called owners of lots in the cemetery acquired no title to the soil. They acquired only a privilege or license to make interments in the lots exclusive of others, this privilege or license being subject to the police power of the State in the exercise of which future interments. may be prohibited and the remains of persons theretofore buried may be removed. Although evidenced by certificate or deed for the particular lots they were or are only easements in the land belonging to the congregation and correspond to certificates given pewholders in a church. Wooldridge v. Smith, 243 Mo. 190; Washburn on Easements (2 Ed.), 604; Richards v. N. W. Prot. Dutch Church, 32 Barb. 42; Jones v. Towne, 58 N. H. 462; Page v. Symonds, 63 N. H. 17; Sohier v. Trinity Church, 109 Mass. 21; Kincaid's Appeal, 66 Pa. 411; Buffalo Cemetery v. City of Buffalo, 46 N. Y. 503; Patridge v. First Independent Church, 39 Md. 631; Rayner v. Nugent, 60 Md. 515; Price v. N. E. Church, 4 Ohio, 515; Dwenger v. Geary, 113 Ind. 106. Where a deed is made on condition subsequent that the premises should be used as a cemetery and a law renders further performance of the condition unlawful, it is discharged and the title of the grantee is no longer subject to it. Scovill v. McMahon, 62 Conn. 378, 21 L. R. A. 58; Ricketts v. Louisville & C. R. R., 91 Ky. 221; Went v. Methodist Protestant Church, 80 Hun, 266, 150 N. Y. 577. (3) The charter invested the city, as part of its Health Department, with full power to regulate cemeteries and interments therein, and therefore when the Municipal Assembly passed and the

Mayor approved the ordinance which took out of the list of the cemeteries wherein interment might be made the cemetery of the plaintiffs, the right thereafter to use this property for further interments ceased. And later when the Assembly passed and the Mayor approved the ordinance which authorized removals to be made from this cemetery at all times of the year and without special permit in each case, the municipality gave further effect to the previous ordinance. Campbell v. Kansas City, 102 Mo. 326; People ex rel. Oak Hill Cemetery Assn. v. Pratt, 129 N. Y. 68; Austin v. Austin City Cemetery Assn., 87 Tex. 330. And the defendants have no right to question the validity of these charter provisions or of these ordinances since they have no interest in the cemetery property as lot owners or otherwise, and are not even members of the congregation. R. S. 1909, sec. 1729; Hutchings v. Weems, 35 Mo. 285; Bank v. Burns, 178 Mo. 731; Dickey v. Porter, 203 Mo. 1.

BOND, J.—This is a second appeal, the suit originating in the St. Louis Circuit Court in July, 1910, to quiet title in plaintiffs to certain described land commonly designated as the "Old Picker's Cemetery." In 1864, Johan Schreiber, together with his wife, Agnesa, conveyed this land, for a consideration of $1800, to A. C. Cordes and seven other specified trustees, to the use and benefit of the German Evangelical Protestant Congregation of the Church of the Holy Ghost. The land was laid out and platted as a cemetery and lots therein sold by the Congregation to purchasers, who received certificates showing an equitable but not a legal title.

In 1865 certain lot-owners and their associates and successors, by a special act of the Legislature, were granted a charter of incorporation under the name of the Evangelical Protestant Cemetery of the Holy Ghost Association, and thereafter, on March 12, 1884, the German Evangelical Protestant Congregation of the

Church of the Holy Ghost was also incorporated, but no formal deed to the land in controversy was ever made to either of these corporations by the trustees to whom Johan Schreiber conveyed the land.

The church corporation thus formed continued to use the land as a cemetery until 1903, when, by ordinance, the City of St. Louis withdrew it from the list of cemeteries in which interments would be "recognized and authorized as legal," for the reason that it had become unsuitable for use as a cemetery, owing to the fact that a business and residence section of the city had grown up around it. Accordingly disinterments and removals were rapidly made by the relatives of decedents.

Thereafter, in order that it might sell this land and purchase a more suitable site for a cemetery, the church corporation, together with the cemetery corporation, instituted this suit against Johan Schreiber and his heirs and the heirs of Albrecht C. Cordes, deceased, the last surviving trustee named in the Schreiber deed, and prayed for a quieting of the title in fee simple in said plaintiffs.

The Schreiber deed contained the following clause, on which appellants base their claim of title by reversion:

"To have and to hold unto the said parties of the second part and unto their successors in office in trust for the benefit of their said congregation for the purpose and uses of a graveyard, burying-ground or cemetery, forever and for no other purpose, foreign or adverse to the one mentioned whatsoever."

The deed from the Congregation to each lot-owner recited that it was "subject to the conditions and restrictions contained in the deed from said Schreiber to the Congregation."

On the first appeal this court reversed and remanded the judgment in favor of the plaintiff church corporation, in order that evidence might be adduced that the congregation authorized the incorporation of

the church and intended to and did part with its property to the corporation thus formed. [187 S. W. 845, Woodson, J., dissenting.]

At the second trial the incorporation of the religious society on March 6, 1884, was shown and, also, that said religious body, on May 19, 1884, recognized its incorporation and, in writing, accepted its charter. (This written acceptance was excluded by the trial court). Also the resolution adopted by the Congregation on January 8, 1917, was introduced, setting forth the various acts of the Congregation since its organization in 1834, its incorporation and customs, and, among other things, reciting "that the Corporation now also has outstanding a contract with Richard C. Spackler for the sale and conveyance to him of the cemetery properties of the Congregation; that this contract was authorized to be made for the Congregation as a corporation by the members thereof and that it is their desire that by the pending suit against the Schreiber heirs the Corporation's title to this south half of the cemetery property is made perfect."

The court found the issues in favor of the plaintiff, the German Evangelical Protestant Congregation of the Church of the Holy Ghost, and ordered a decree entered of record vesting the fee-simple title to the land in controversy in said church corporation, free and clear from any trust, and dismissed the defendants' cross-bill. From this decree none of the defendants except the Schreiber heirs appealed.

I. The only question presented by the appeal in this case is whether or not the appellant, the Schreiber heirs, have been aggrieved by the decree rendered in the circuit court, since that judgment is assented to and acquiesced in by all other parties to the record.

The theory of appellants is that the deed of their ancestor to the property in question (a certain portion of the Old Picker Cemetery) contained a condition

subsequent by the non-compliance with which
Condition     the land conveyed has reverted to them. This
Subsequent.   question is one of law under the terms of the
deed taken in connection with the undisputed facts. The
latter may be briefly referred to in order to show the
circumstances under which the deed was executed. The
grantor in the deed had purchased the land in question a
few months prior to his conveyance thereof for $1000. He
sold it to seven individuals in trust for an unincorpora-
ted religious association for $1800, receiving a part of
the purchase money in cash and taking a mortgage back
from the trustees to secure the balance.  The debt thus
secured was paid before its maturity.  The deed of
bargain and sale to said trustees purported to con-
vey a fee simple, unless defeasible under the condition
above quoted.  These trustees, under the terms of
the deed, took a dry, legal title, coupled with no active
duties.  The deed in express terms provided that the
equitable owners of the land, the religious association,
should use it for a "graveyard, burying ground or
cemetery and for no other purpose foreign or adverse
to the one mentioned whatsoever." The deed further
provided for a plat and plan of the intended cemetery
by the religious association, and that the sale of the
burying lots should be made by 'a committee appointed
by said religious association, from time to time, styled
the "Cemetery Committee," by the method of executing
certificates in the name of the congregation to the
respective purchasers of such lots, such cemetery
committee being restricted in making sales to the
powers given them by the "private records of said
congregation and to this deed;" and that such certifi-
cates should carry only an equitable and not a legal
title to the purchaser.  The deed in question contained
no provision for a reversion or for any right of re-
entry upon the land therein conveyed in favor of the
grantors (Schreiber and wife) or their heirs.

It is well to note that in suits under Section 2535, Revised Statutes 1909, the court before whom an action to quiet title is pending, is empowered "to ascertain and determine the estate, title and interest of said parties, respectively, in such real estate, and to define and adjudge by its judgment or decree the title, estate and interest of the parties severally in and to such real property."

In speaking of the meaning of this statute this court said:

"It has been again and again ruled by this court that the object of this statute (as expressly said in it) is to ascertain and define '*respective titles*' and to adjudge or decree the '*several*' estates of the parties between themselves. Whichever of the parties has the better title, is entitled to have it quieted against his adversary. It is not essential that either plainiff or defendant should possess the highest form of ownership in land, such as would warrant a judgment investing him with a fee simple title good against the world. It is sufficient if one of the parties proves title and ownership superior to that of the opposite party. When this is done the owner of the better title has the right to a judgment or decree establishing it as against the opposite party and quieting it from further attack by him. [Maynor v. Land & Timber Co., 236 Mo. l. c. 728; Gage v. Cantwell, 191 Mo. 698; Graton v. Land & Lumber Co., 189 Mo. 322.]"—Toler v. Edwards, 249 Mo. l. c. 161, 162. See, also, Felker v. Breece, 226 Mo. l. c. 332.

Therefore, as stated, the only question that can arise under the present appeal is whether the judgment of the lower court has deprived the Schreiber heirs of any interest and estate in the lands reserved to them by the terms of the deed executed by their ancestor to the trustees named therein for the benefit of the unincorporated religious association; for if the language of that deed left no reversion or right of re-entry in favor of them in any event, then they could not have

been aggrieved by the decree of the trial court vesting the title in the church corporation which was subsequently formed by the religious association named in the deed. As to all persons not appealing from that judgment, its findings are absolutely conclusive. Hence, in the determination of the rights of the Schrieber heirs, it is wholly unnecessary to review the correctness of the judgment of the trial court as to the other parties in interest; i. e., the heirs of the original trustees to whom the property was conveyed, the corporation which succeeded the voluntary religious association, and the corporation legislatively granted to the cemetery committee.

Assuming for the argument only, that the pleadings of the Schreiber heirs amounted to an assertion of their right to a reversion under the terms of the deed in question, equivalent to a re-entry (Lackland v. Hadley, 260 Mo. l. c. 567; Bredell v. College, 242 Mo. l. c. 337; Hoke v. Central Twp. Farmers' Club, 194 Mo. l. c. 586), it only remains to determine whether, in the circumstances of this case and under the language of that instrument, there has been a breach of the condition subsequent contained in the deed which *would enure* to the benefit of the Schreiber heirs.

The law governing the rights flowing from breaches of conditions subsequent, as well as that controlling the creation of such methods of defeating a conveyance, is well settled in this State and has been formulated in accordance with our adjudications, to-wit:

"While a condition subsequent may be inserted in a conveyance of lands in fee without using express terms of reverter upon the breach of such condition, if the deed in its entirety and the circumstances attending its execution, demonstrate that the object of the grantors was to cause a reversion of the estate upon the subsequent happening of a lawful condition; yet no such conclusion will be drawn if it may be avoided by any other reasonable construction of the language of

the deed. This is the settled policy of the law. The reason of which is, that estates once vested in fee ought not to be uprooted, except upon proof of the happening of a lawful condition attached to the continuance of the estate by the terms of the deed, and further proof that it was the intention of the grantor in making the conveyance that it should revert when this condition ceased to exist. [Morrill v. Railroad, 96 Mo. 174; Krueger v. Railroad, 185 Mo. 227; Roberts v. Crume, 173 Mo. 1. c. 581; Ellis v. Kyger, 90 Mo. 600; Studdard v. Wells, 120 Mo. 25; Messersmith v. Messersmith, 22 Mo. 369; Moore v. Wingate, 53 Mo. 398; O'Brien v. Wagner, 94 Mo. 93; Haydon v. Railroad, 222 Mo. 1. c. 139; Lackland v. Hadley, 260 Mo. 539.]"—Catron v. Scarritt College, 264 Mo. 1. c. 723.

In determining whether non-compliance with the condition subsequent inserted in the deed would cause a reversion upon re-entry or equivalent acts by the heirs of the grantor, we must consider the intent of the parties, as ascertained from a consideration of the instrument as an entirety, the circumstances of its execution, and the facts causing the violation of the condition subsequent; and if from all or any of these sources of inquiry, it should be patent that there was no intention by the parties to the deed that the land should revert to the grantor or his heirs, or if it should appear that the performance of the condition subsequent was illegal or impossible (Clarke v. Brookfield, 81 Mo. 1. c. 509; Morgan v. Cox, 22 Mo. 1. c. 373; Scovill v. McMahon, 62 Conn. 371; Ricketts v. Railroad, 91 Ky. 221; Taylor v. Sutton, 15 Ga. 103; Ordway v. Farrow, 79 Vt. 192; 8 R. C. L. 1107, sec. 167), then the breach of the condition subsequent did not enure to the benefit of the Schreiber heirs; for upon either hypothesis they could have no interest whatever in the land conveyed.

II. When the deed in question was made, the grantor sold a piece of land for $1800 which he had ac-

quired only six months before for $1000. Except as to the condition subsequent therein, the deed was one conveying a fee simple absolute. The grantor did not insert any words providing for a reversion to himself or heirs.

<div style="margin-left:2em">Conveyance for Cemetery Uses.</div>

In circumstances somewhat similar, where land was conveyed to the City of St. Louis to be used as a public market, it was held that an abandonment of that use did not cause a reversion. [Hand v. St. Louis, 158 Mo. l. c. 209.] It does not appear in that case that any consideration whatever was paid for the conveyance to the City of St. Louis. For a much stronger reason the rule therein announced should be applied in the present case, where the consideration paid was the full value of the land at the time of its conveyance by Schreiber and wife; indeed, was nearly twice what he paid for it only six months previously. In these circumstances it would be quite unreasonable to impute to both parties to the deed an *intention* that the breach of the condition subsequent should enure to the benefit of the grantors, for whom no provision for reverter was put in the deed. It would be difficult to perceive any sensible motive on the part of the buyers of the land at a full price, for surrender of their title in case the land was not put to the particular use prescribed in the deed, which use primarily concerned the purchasers. The nature of that use (church cemetery) points unmistakably to the fact that the condition subsequent providing for it, was inserted for the benefit of the parties who were buying and paying for the land in order to procure a burying ground for all the members of the religious association whom they represented and who furnished the entire consideration. This unincorporated religious association was incapable of taking *eo nomine* a deed. It had the distinct purpose of procuring a burying ground for its deceased members, and in order that a trust to that effect should be created, it bought and paid for land with a provision in the deed prescribing the particular use to which they

277 Mo.—9

intended to devote it. By this plan the religious association avoided circuity of conveyances; for though incapable of taking a deed as an aggregate body of unincorporated persons, the religious association, which paid for the land, might have taken a deed to a third party or parties for its benefit and might have required such trustee or trustees to make a second conveyance declaring the purpose for which he or they stood seized of the title. Instead of doing this they adopted the simple device of requiring an insertion in the direct deed from the first grantor.

We do not think any other conclusion as to the purpose of the insertion of the condition subsequent in the deed under review could be rationally arrived at from a consideration of the terms of the instrument and the circumstances surrounding its execution and the obvious purpose of the religious association, as shown by the records of its action in this matter. It follows that the Schreiber heirs, having no right to a reversion of the land in the terms of the deed of their ancestor or by the *intent* of the parties thereto, were not prejudiced by the judgment of the lower court from which they alone appealed.

III. There are other facts in the present record which are equally conclusive against the right of the Schreiber heirs to any redress on this appeal. The law is that where a condition subsequent becomes incapable of performance without fault of the grantee or from any legal obstacle, it cannot defeat the fee granted or cause a reversion to the grantor or his heirs. That the City of St. Louis, in the valid exercise of its police powers, had full authority to order the cessation of interments in the cemetery in question, is a proposition which cannot be gainsaid, either in reason or upon authority, and it is affirmed with a full citation of cases, by WOODSON, J., in Union Cemetery Assn. v. Kansas City, 252 Mo. l. c. 502, as well as in the cases cited in this opinion.

Grantees Without Fault.

There are no circumstances in this case invalidating the ordinances of the City of St. Louis prohibiting any further use of the property in question for cemetery purposes, such as appeared in the case cited supra (Union Cemetery Assn. v. Kansas City). Besides, in this case the owners of the cemetery property acquiesced in the reasonableness of the ordinance prohibiting further interments in the cemetery in question, and have complied therewith by purchasing a cemetery whose location frees it from unsanitary conditions and are seeking to effectuate that purpose by the present suit. In the Kansas City case, supra, the owners of the cemetery denied the reasonableness of the ordinance and were sustained in that contention by this court. The facts of the two cases are essentially dissimilar, and the present case falls within the general rule that a reasonable ordinance of a municipal body prohibiting further interments in a cemetery within its limits, is within the power of that body and must be obeyed. Applying this principle to the matter in hand, the rule is thus stated by a standard text-writer:

"Where a deed is made on the condition subsequent that the premises should be used as a cemetery, and an act of the Legislature renders further performance of the condition unlawful, the condition is discharged, and the title of the grantee is no longer subject to it." [2 Devlin on Real Estate (3 Ed.), sec. 961.]

The result is that even if the deed had contained any provision securing a reversion of the property in question or if such had been the intention of the parties, it would not be available in the present case to the Schreiber heirs.

The judgment of the trial court is, therefore, affirmed. All concur.