GEORGE ALLEN, Appellant, v. JOE BEASLEY.

### Division One, March 5, 1923.

1. **EJECTMENT: Against Tenant Alone.** An action of ejectment may be maintained against the tenant alone, and the fact that the record owner and his landlord was not made a party does not affect the jurisdiction of the court to determine the interest of the tenant in the property.

2. **———: Land Conveyed to Railroad: Reversionary Interest.** The title of land conveyed by the owner to a railroad company reverts back to him when it ceases to be used for railroad purposes; and although, after it was conveyed to the railroad company, it was sold and conveyed by a receiver duly appointed, the owner can recover it by ejectment after the land is abandoned by the company and ceases to be used for railroad purposes.

Appeal from New Madrid Circuit Court.—*Hon. Sterling H. McCarty*, Judge.

REVERSED AND REMANDED.

*Henry C. Riley, Jr.*, for appellant.

(1) The interest acquired by the railroad company by deed from appellant and wife was only an easement, the right to hold said land so long as used for railroad purposes. Sec. 9850 (2d Clause) R. S. 1919; Kellogg v. Malin, 50 Mo. 500; Chouteau v. Mo. Pac. Ry Co., 122 Mo. 386; State ex rel. v. Road Co., 207 Mo. 103; Boyce v. Mo. Pac. Ry. Co., 168 Mo. 588; Railroad v. Sendlin, 173

Mo. App. 389; Railroad v. Tel. Co., 134 Mo. 411. (2) Ejectment is the proper remedy to recover the premises when the use is abandoned. 33 Cyc. 228; Ruddick v. St. Louis, Keokuk N. W. Ry. Co., 116 Mo. 31. (3) When the railroad abandoned the premises for railroad purposes the same reverts to owner. Roanoke Inv. Co. v. Railroad Co., 108 Mo. 67; Boyce v. Mo. Pac. Ry. Co., 168 Mo. 589.

*Geo. H. Traylor* for respondent.

(1) The record and agreed statement of facts both show, that the record title to the lot in question, is and was at the time of the institution of this suit in one George V. Montague, that defendant herein was his tenant, and that the said Montague was not made a party defendant to this action, and as far as the record shows knew nothing of this suit. He should have been brought in as a defendant and joined as such with his tenant who was not claiming any title and could not have defended his landlord's title. The court was without jurisdiction to take a man's property without first having him in court giving him an opportunity to be heard and to defend his title. Mo. Constitution, sec. 30, art. 2; 2 Kent's Com. 13; Bertholf v. O'Reilly, 74 N. Y. 519; People ex rel. Whetherbee v. Supervisors, 70 N. Y. 228; George v. Middough, 62 Mo. 551; Roberts v. Land & Imp. Co., 126 Mo. 469; Jones v. Yore, 142 Mo. 44. If defendant held possession of the lot under Montague, as his tenant only, then Montague had a right as landlord to defend the suit. Sutton v. Cassellegi, 77 Mo. 397; Hill v. Atterbury, 88 Mo. 118. (2) "That a fee simple may be taken and acquired through the exercise of the power of eminent domain may be conceded. But that, I apprehend, would be where an absolute and unconditional price was paid for the property. In determining the consideration to be paid by the railroads for the right of way, the benefits and advantages accruing to the owner are taken into calculation. The benefits and advantages, then, are

considered as forming part of the purchase money." Kellogg v. Malin, 50 Mo. 500. Appellant and his wife executed to the St. Louis & Missouri Southern Railroad Co., their warranty deed for full consideration to said lot, without any reservation or condition. The railroad company obtained the entire fee, by reason of the deed made, and the corporation could convey the land thus obtained, when no longer necessary for its purpose, to whomsoever it would, just as a natural person would do. Nye v. Railroad, 113 Mass. 277; Venerable v. Wabash Ry. Co., 112 Mo. 123; Chouteau v. Mo. Pac. Ry. Co., 122 Mo. 387.

WOODSON, J.—This is an ejectment suit brought by the plaintiff for the possession of the south half of Lot 2 in Block 10 of John E. Powell's 4th Addition to the city of New Madrid, Missouri, and for damages and monthly rents and profits.

This case was submitted to the court upon the following agreed statement of facts, to-wit:

"It is hereby agreed and stipulated by and between the parties to this action by their respective attorneys, Henry C. Riley, Jr., attorney for plaintiff, and George H. Traylor, attorney for defendant, that this cause shall be submitted to and determined by the court upon the following facts:

"That on December 21, 1908, one Emma Lesieur was the owner of the land described in plaintiff's petition, to-wit: South Half of Lot 2 in Block 10, John E. Powell's Fourth Addition to the city of New Madrid, Missouri, situated in New Madrid County, Missouri.

"And that on said day for a valuable consideration the said Emma Lesieur conveyed by warranty deed said lot to the plaintiff herein. That said deed was duly acknowledged and filed for record the same day as executed, and recorded in the land records of New Madrid, County, Missouri.

"That afterwards on January 3, 1912, the plaintiff, George Allen, and wife, by a warranty deed duly acknowl-

edged, filed for record the same day as executed, conveyed said land described in the petition to the St. Louis & Missouri Southern Railroad Company, a corporation. And that no reservation was made in said deed as to the use to which said land was to be put by said grantee.

"That afterwards on the —— day of ——, 1916, one M. J. Cochran was duly appointed receiver of said Missouri Southern Railroad Company by the Circuit Court of New Madrid County, Missouri, that said Cochran qualified as such, took charge of said road and all its property and fully discharged his duties as such and was on the —— day of September, 1918, finally discharged as such.

"That on January 2, 1918, an order of sale was made by the judge of the circuit court aforesaid, in vacation, authorizing said receiver to sell the property of said St. Louis & Missouri Southern Railroad Company.

"That thereafter on February 5, 1918, said receiver made a report to said court of said sale made under said order, and on the same day said report was in all things approved by said court.

"That on February 7, 1918, said Conran, as receiver under said order of sale aforesaid, by his deed as such, conveyed said land to Joseph Greenspon & Sons Iron & Steel Company. That said deed was duly filed for record on said day, and recorded in the land records of New Madrid County, Missouri.

"That thereafter said Joseph Greenspon & Sons Iron & Steel Company, by its quitclaim deed, conveyed said land to Thomas Gallivan; that said deed was duly filed for record, and recorded in the land records of New Madrid County, Missouri.

"And that thereafter and before the filing of this suit the said Thomas Gallivan and wife, by their quitclaim deed, conveyed said land to one George V. Montague, and that said deed was duly recorded in the land records of New Madrid County, Missouri.

"That the defendant Joe Beasley was in possession

of the premises at the institution of this action and still holds possession of the same as the tenant of George V. Montague, the grantee in the above-mentioned deed.

"That the Public Service Commission of the State of Missouri by its order of record made on the 25th day of February, 1918, authorized the said Joseph Greenspon & Sons Iron & Steel Company to abandon the operation of said railroad, and to remove the tracks, rails and equipment of all kinds from the right of way of said railroad company.

"That immediately upon receipt of said order aforesaid said operation of said railroad was stopped, the tracks, rails and equipment of all kinds were removed from said right of way and that the said railroad has not since been operated as such; that all of said property was removed, and the same, the railroad, abandoned.

"It is further agreed that if the court finds for the plaintiff it may assess plaintiff's damages at the sum of one cent, and the monthly value of the rents and profits of said premises is one cent."

I.   The agreed statement of facts show that George V. Montague was the record owner of this property at the time the suit was instituted, and that the defendant Beasley was his tenant; the former not having been made a party to the suit, the defendant contends that the court had no jurisdiction of the case for the reason that Montague's property cannot be taken from him without his being made a party.

Parties.

That contention is unquestionably true, but that has nothing to do with jurisdiction in this case, for the suit is against Beasley and he alone can be affected by the judgment, and the fact that Montague is not a party to the suit does not affect the jurisdiction of the court over Beasley and his interest, though possessory, in the property.  This contention is decided in favor of the appellant.

II.   The real question in this case hinges around the contention as to whether or not when a person con-

veys land to a railway company, as in this case, the title thereto reverts back to him when the land ceases to be used for railroad purposes.

The appellant holds to the affirmation of the proposition and the respondent to the negative. Clause 2 of Section 9850, Revised Statutes 1919, reads: "to take and hold such voluntary grants of real estate and other property as shall be made to it to aid in the construction, maintenance and accommodation of its railroads; but the real estate received by voluntary grant shall be held and used for the purpose of such grant only."

In discussing the question now under consideration this court in the case of Kellogg v. Malin, 50 Mo. 500, used the following language:

"That a fee simple may be taken and acquired through the exercise of the power of eminent domain may be conceded. But that, I apprehend, would be where an absolute and unconditional price was paid for the property. In determining the consideration to be paid by these roads for the right of way, the benefits and advantages accruing to the owner are taken into the calculation. The benefits and advantages, then, are considered as forming part of the purchase money.

"But suppose the road, after it is started, ceases to exist, and its operation is abandoned, will the land revert back to the owner, or may the road keep and dispose of it for a purpose entirely different from that had in view when it was commenced? It seems to me there can be but one answer to this question. There might be cases where the commissioners and the court would not award the proprietor anything more than nominal damages, believing that the benefits would be greater than the value of the land; and in such a case, if the road should cease or be abandoned, the owner would be deprived of his estate without any compensation. In the matter of highways, where lands have been taken and appropriated in this way, it has never been held that anything more than an easement passed by the condemnation and the payment of the amount of damages assessed.

"The use is vested in the public, but the reversionary title still continues in the owner of the soil. In my opinion, notwithstanding the language used, nothing more than an easement passed to the road, giving it perpetual and continuous title so long as it used the land for the purpose for which it was taken, but, when that use was abandoned, then it would revert back to the owner of the premises."

Regarding the same point this court in the case of Chouteau v. Mo. Pac. Ry. Co., 122 Mo. 375, l. c. 386, said:

"The like view has been announced in Minnesota as to the effect of a statute of that State which professedly authorized the acquisition of an *'absolute estate in fee simple,'* whereas, by the constitution of that State, the condemning company was only authorized to acquire 'a franchise of way' and it was held that the effect of the constitutional provision was to so limit the effect of the statute as to permit the company to acquire, not the fee simple title, but only an easement. [Scott v. Railroad, 21 Minn. 322.]

"These cases proceed on the familiar principle that what the law will imply in an express contract is as much a part and parcel of it, and as much to be dwelt on in construing it, as if stated in such contract in direct terms. [Whincup v. Hughes, L. R. 6 C. P. 78; Bishop on Contr. (Enlarged Ed.) secs. 241, 253, 439.] In this case, then, the law itself incorporated into the deed made by Guinotte those conditions and restrictions which the charter of the company intended should govern, and limited the uses to which the land granted should be applied.

"It necessarily results from these authorities that the interest which the Pacific Railroad Company derived from Guinotte was but an easement, a right of way, and not a title, (Union Depot Co. v. Frederick, 117 Mo. 138, per MacFarlane, J.; Gantt, J., concurring); and consequently the widow of a husband formerly seized of the premises, could have no dower therein—unless it be true, which is not true, that a widow is dowable in an easement. [Mills on Eminent Domain (2 Ed.) sec. 71, and cases

cited; Tiedeman on Real Property (Enlarged Ed.), sec. 116; 1 Wash. on Real Property (5 Ed.) 203.].

"This point alone is decisive of this case, and is a sufficient answer to the contention of plaintiff's counsel as to the construction put by this court on Nye v. Railroad, 113 Mass. 277, when Venable's Case, supra, was last before us.

"In Nye's Case the railway company obtained the entire fee, by reason of the deed made, 'just as a natural person would do,' and the corporation could convey the land thus obtained, when no longer necessary for its purposes, to whomsoever it would. Not so in the case at bar; no fee was obtained only in form and outward semblance; not in fact or in law. And whatever right was acquired by the defendant company or its predecessor could not have been disposed of, except as a whole, and not in detached or fractional portions; and when disposed of could only have been disposed of to another railroad corporation for those uses, and those alone, for which the original grant was made. The attempt to divert the subject of the grant to other purposes would result in reversion to the last owner of the premises. [Pierce on Railroads, 158.].

"In the second place, the charter uses the term 'owner' when providing for voluntary relinquishment or condemnation of property. With the expection of the curator of minors, he was the only party known to the law with whom the company need treat with the view of purchasing, or, failing in such negotiation, need bring before the judge or court in order to take the land by virtue of the power of eminent domain.

"On this point, a recent author of acknowledged merit says: 'The word 'owners' is generally employed in the statutes as describing the persons who must be made parties to proceedings to establish roads or streets. In order to carry into effect the purpose of the statute and to give just force to the provisions of the Constitution, the term 'owners' should be construed to mean all who have an estate in the land and whose interests ap-

pear of record. This would require that all who have vested estates should be made parties, but would not apply to those who have mere liens or inchoate interests. Under the operation of the rule it would not be necessary to make a married woman having an inchoate interest in the lands of her husband a party to the proceeding. The principle upon which the doctrine that a wife need not be made a party rests, is, that the right to dower, or to an estate in the lands of the husband, is a right created by law and not by contract, and that it is not vested until the death of the husband. [Elliott on Roads and Streets, 235.]

"Now, in this case, at the time of the transfer by Guinotte, to the Pacific Railroad Company, he was the owner of, and represented, the fee, and compensation to him was all that was necessary. This is the rule, where the husband then being the owner conveys the fee, and it is difficult to see why the same rule should not apply where the conveyance is made by any other owner representing the fee, since in either case, the inchoate interest or possibility of the wife is not taken into account, the law possessing no scales and owning no machinery whereby such possibilities and expectancies can be weighed or estimated. [Mills on Eminent Domain (2 Ed.) sec. 71, and cases cited.]

"If the Pacific Railroad Company had been compelled to resort to proceedings *in invitum* to obtain the right of way, Guinotte would have been the only party that could have been brought into court, or against whose land a judgment of condemnation could have been rendered; this being the case, it is not easy to see why his deed should not be as effective in conveying a right of way or easement to the Pacific Railroad Company as such, divested of all inchoate rights and interests as would result from the deed of a husband in similar circumstances; and, that such is the operation of the deed of a husband, we have already declared in Venable's Case, supra. Indeed 'there seems no good reason, why a voluntary performance of an act to which the party is com-

pelled by law, should not have the same effect as is pro-
duced by compulsion.' [Potter v. Wheeler, 13 Mass. l. c.
507.]   Again, it was competent for the Legislature, in
express terms, to have destroyed all inchoate rights and
interests in condemnation proceedings; this is attested
by abundant authority; but, by singling out the 'owner'
of the property as the only party necessary to a deed of
relinquishment or to condemnation proceedings, the leg-
islative body has impliedly said that the rights of no
other party need be relinquished or obtained.   Such an
implication necessarily excludes all inchoate interests,
possibilities and expectancies; and 'what is implied in a
statute is as much a part of it as what is expressed.'
[United States v. Babbit, 1 Black, 55; Gelpcke v. Du-
buque, 1 Wall. 220; Stradling v. Morgan, Plowd. 199;  2
Bishop on Married Women, sec. 63; Bishop on Contracts,
sec. 241;  State ex rel. v. Board, 108 Mo. 235, 18 S. W. l.
c. 784.]''

And in State ex rel. v. Cape Girardeau & Jackson
Gravel Road Co., 207 Mo. 85, l. c. 103, on the same ques-
tion:

"This court, beginning with Kellogg v. Malin, 50
Mo. 496, has construed charters granting the power to
take and hold lands in fee simple for a railroad right of
way, to mean no more than the right to acquire an ease-
ment so long as it needed the land for the purpose for
which it was taken.   In that case, Judge WAGNER, speak-
ing for the court, said: 'It is true that in speaking of the
title which the company acquires, the Legislature here
uses the term "fee simple"; but did it contemplate a fee
simple according to the technical legal meaning of the
term?  .  .  .   In determining the consideration to be
paid by these roads for the right of way, the benefits and
advantages accruing to the owner are taken into calcula-
tion.  The benefits and advantages, then, are considered as
forming a part of the purchase-money.  .  .  .   The
use is vested in the public, but the reversionary title still
continues in the owner of the soil.   In my opinion, not-
withstanding the language used, nothing more than an

easement passed to the road,' etc.   That doctrine was reannounced in Venable v. Railroad, 112 Mo. 103, and in Chouteau v. Railroad, 122 Mo. l. c. 385; Boyce v. Railroad, 168 Mo. 589; et seq.   While counsel urge that Kellogg v. Malin, 50 Mo. 496, should no longer be followed, we are of the opinion that a rule of law so long established and adhered to should be considered settled, especially where the matter has been so thoroughly reconsidered and sustained.   The argument then that the Cape Girardeau Macadamized & Plank Road Company acquired a fee simple which it could transmit after it had ceased to be a corporation cannot be accepted as sound.   We think it is clear that the road only obtained an easement over the right of way during its corporate life, which expired in 1871.   This conclusion is reinforced by the 12th section which permits the company to acquire in fee simple lands along its route which it is authorized to sell and convey, thus emphasizing the fact that it did not have the power to convey its right of way in fee simple.''

Also see on this point the case of Boyce v. Mo. Pac. Ry. Co., 168 Mo. 583, l. c. 588-89, and Kansas City So. Ry. Co. v. Sandlin, 173 Mo. App. 384, l. c. 389-90, where it is held that the interest in land thus acquired by dedication is the same as that acquired by condemnation.

The same doctrine was announced in the case of St. L. I. M. & S. Ry. Co. v. Cape Girardeau Tel. Co., 134 Mo. App. 406.   On page 411, the court said: ''In Missouri, the estate of a railroad company in lands acquired for railroad purposes, right of way, etc., amounts to an easement only.   The fee to the lands thus occupied continues to reside in the adjacent landowners.   Our constitutional provision to that effect has been frequently so expounded by the courts.   [St. L. Railroad Co. v. Clark, 121 Mo. 169; Boyce v. Mo. Pac. Ry. Co., 168 Mo. 583.]''

Counsel for respondent cited the following cases in support of the negative of this proposition: Nye v. Railroad, 113 Mass. 277; Venable v. Wabash Western Ry. Co., 112 Mo. l. c. 123-4; Chouteau v. Mo. Pac., 122 Mo. l. c.

387.  We have considered these cases and have noticed them in the consideration of the authorities cited by counsel for appellant, and in our opinion there is no conflict between the cases.  We therefore decide this contention for the appellant.

We are therefore of the opinion that the judgment sh'ould be reversed, and remanded to the circuit court to grant a new trial and to proceed with the case as herein indicated.  All concur.