STATE OF MISSOURI at the relation of STATE HIGHWAY COMMISSION, Appellant, v. HARRY GRIFFITH ET AL., B. M. ACHTENBERG and MINNIE ACHTENBERG, Exceptors.—114 S. W. (2d) 976.

Division One, April 1, 1938.

*Louis V. Stigall* for appellant.

*Ben M. Achtenberg* for respondents.

BRADLEY, C.—This cause is in condemnation and affects three parcels of land taken by the State for state highway purposes. The State Highway Commission and defendants, Achtenbergs, filed exceptions to the report of the commissioners appointed to assess damages. The jury found for the Achtenbergs on tract Q in the sum of $50; on tract Q3 in the sum of $10, and on tract R in the sum of $40. The State Highway Commission and the Achtenbergs filed motions for a new trial. The chief ground of complaint in the motion for new trial by the Achtenbergs was that the damages awarded were grossly inadequate and amounted to confiscation of their property. The Highway Commission claims that the Achtenbergs had no interest in the right of way taken, and the only complaint made by the commission is that the trial court erred in not sustaining its request

for a directed verdict at the close of the case. The motion by the Highway Commission for a new trial was overruled, but the motion by the Achtenbergs was sustained "on the ground that the verdict of the jury is against the weight of the evidence." The Highway Commission appealed.

Hereinafter we refer to the State Highway Commission as plaintiff and to the Achtenbergs as defendants.

The three strips of right of way in question were formerly a part of the right of way of Kansas City, Clay County, and St. Joseph Railway Company, which company, for many years prior to 1932, operated an interurban railroad between Kansas City and Excelsior Springs, and between Kansas City and St. Joseph. The railway company, in 1911, acquired from the then owners and for right of way purposes, the tracts herein involved. In 1934, all the properties of the railway company were sold through bankruptcy proceedings in Kansas City and defendant, B. M. Achtenberg, was the purchaser of all of the right of way.

Tract Q, when the railroad right of way was acquired, was known as the Compton land; tract Q3 as the Endicott land, and tract R as the Murphy land. The Compton, Endicott and Murphy heirs in separate deeds, and subsequent to B. M. Achtenberg's purchase in the bankruptcy proceedings, conveyed the respective tracts or parcels to the State for State highway purposes. These deeds were obtained from the respective heirs, prior to filing condemnation proceedings.

Defendants contend that defendant, B. M. Achtenberg, by virtue of the deed to him through the bankruptcy proceedings, acquired the fee in and to the right of way of the railroad company, while on the other hand, plaintiff contends that the railroad company, by its right of way deeds in 1911, acquired nothing more than an easement, and that when the railroad company ceased to use the land for right of way purposes, the land reverted to the heirs of the grantors in the right of way deeds.

Both contentions are based on the language of the right of way deeds of Compton, Endicott and Murphy to the railroad company. These deeds are alike, except as to the names of the grantors, the dates, description and consideration.

Each of these deeds is captioned, "Missouri Warranty Deed." The granting clause is: "Grant, bargain and sell, convey and confirm unto the said party of the second part, its heirs and assigns, the following described lots, tracts or parcels of land lying, being and situate in the County of Clay and State of Missouri, to-wit: *As and for a right of way for said railway.*" (Italics ours.) Then follows description. The *habendum* reads: "To have and to hold the premises aforesaid with all and singular, the rights, privileges, appurtenances and immunities thereto belonging or in anywise appertaining unto the said party of the second part and unto its heirs and assigns forever."

232

Then follow the usual covenants of warranty in a general warranty deed.

The trial court held that defendant, B. M. Achtenberg, by his deed through the bankruptcy proceedings against the railway company, acquired an indefeasible fee interest in the tracts or parcels involved.

Section 4655, Revised Statutes 1929 (Mo. Stat. Ann., sec. 4655, p. 2072), provides, among other things, that a railroad corporation shall have power "to take and hold such voluntary grants of real estate and other property as shall be made to it to aid in the construction, maintenance and accommodation of its railroads, but the real estate received by voluntary grant shall be held and used for the purpose of such grant only." The part of Section 4655 quoted, was enacted by the Legislature of 1865-66 (Laws 1865-66, p. 27). The Compton, Endicott and Murphy right of way deeds to the railroad company show on their face, as appears above, that the tracts or parcels were granted for right of way purposes.

It is conceded that the tracts involved ceased to be used for right of way purposes in 1932. If the right of way deeds were *voluntary*, or for right of way purposes *only*, then it is conceded that, upon cessation of use for right of way purposes, the land would revert to the grantors or their heirs.

Two questions are presented, viz.: (1) Were the Compton, Endicott and Murphy right of way deeds voluntary within the meaning of Section 4655? and (2) Should these deeds be construed to mean that the respective tracts granted were to be "held and used" for railroad right of way purposes only?

██ It is contended by defendants that the term *voluntary* as used in Section 4655 means without valuable consideration, while on the other hand, it is contended in effect by plaintiff that the term *voluntary* as used in the statute, is used in contradistinction to *condemnation.*

It was held in Coates & Hopkins Realty Co. v. Kansas City Terminal Ry. Co. et al., 328 Mo. 1118, 43 S. W. (2d) 817, that land conveyed for a valuable consideration, to a railroad company, without reference to user purpose, passed an indeterminable fee. Also, "voluntary grants" as used in Section 4655, Revised Statutes 1929, was construed in that case "to mean that a grant of land, deeded to a railroad corporation, reverts to the original grantor thereof upon abandonment, when it was conveyed without valuable consideration, or when it was conveyed to induce a railroad corporation to take a defined route." And voluntary grant of land to a railroad company was in effect defined (328 Mo. 1. c. 1133, 43 S. W. (2d) 1. c. 823) as a grant without a valuable consideration.

The Compton, Endicott and Murphy deeds to the railroad company were not without a valuable consideration, and if that is the test by which to determine whether a right of way deed to a railroad company

is voluntary are not, then the right of way deeds concerned here were not voluntary, because they were for a valuable consideration. The result reached in the Coates & Hopkins Realty Company case, supra, that voluntary as used in Section 4655, means without a valuable consideration, was on the theory that the term "voluntary" as used in the statute has the same meaning as when that term is used with reference to fraudulent conveyances. It might be contended that the term "voluntary" is used in the statute in contradistinction to *condemnation*, but such was not the construction in the Coates & Hopkins Realty Company case, supra.

We do not think it is necessary to again determine the meaning of the term "voluntary" as used in Section 4655, and this because the answer to the second question here presented will be decisive of the present case.

Should the Compton, Endicott and Murphy right of way deeds be construed to mean that the respective tracts granted were to be "held and used" for railroad right of way purposes only? Except for the language, "as and for a right of way for said railway," following the granting clause in these deeds, they are otherwise general warranty deeds. "A 'right of way' in its legal and generally accepted meaning in reference to a railroad company's interest in land is a mere easement for railroad purposes in the lands of others." [51 C. J., sec. 203, p. 539.] To support the contention that the right of way deeds here concerned conveyed an indefeasable fee, notwithstanding the language, "as and for a right of way for said railway," defendants cite Section 3106, Revised Statutes 1929 (Mo. Stat. Ann., sec. 3106, p. 1932), and Studdard v. Wells, 120 Mo. 25, 25 S. W. 201; Morrill v. Wabash, St. Louis & Pac. Ry. Co., 96 Mo. 174, 9 S. W. 657; Chouteau v. City of St. Louis, 331 Mo. 781, 55 S. W. (2d) 299; German Evangelical, etc., Church v. Schreiber, 277 Mo. 113, 209 S. W. 914, are cited. None of these cases concerned the subject of reverter of a railroad right of way when user as such ceased. In the Morrill case the right of way deed contained this provision: "This agreement is made for the location, construction and maintenance of said railroad, and for that use and purpose only, and this license to operate in perpetuity if said railroad company, its successors and assigns, shall continue to maintain and operate their railroad, and to cease with the nonuse of the same for such purpose." The railroad was not constructed over its entire charter route, and it was contended that because of such failure, the title to the right of way involved reverted. The original grantee railroad failed and its properties were taken over by another railroad company. It was held that the conditions of the right of way deed had been complied with. We do not deem it necessary to review the other cases above cited and relied upon by defendants. They do not deal with right of way deeds to a railroad company. Section 3106, Revised Statute 1929, cited by

defendants, provides that "the term 'heirs,' or other words of inheritance shall not be necessary to create or convey an estate in fee."

Defendants cite from other jurisdictions Quinn v. Pere Marquette Railway Co. (Mich.), 239 N. W. 376; Johnson v. Valdosta, M. & W. Railway Co. (Ga.), 150 S. E. 845; Askew v. Vicksburg, S. & P. Railway Co. (La.), 132 So. 510; Shreve v. Norfolk & W. Ry. Co; (Va.), 64 S. E. 972, 23 L. R. A. (N. S.) 771; Gilbert v. Mo., K; & T. Ry. Co. (8 C. C. A.), 185 Fed. 102; Atlantic Coast Line Co. v. Duval County (Fla.), 154 So. 331; Marland v. Gillespie (Okla.), 33 Pac. (2d) 207; Texas & P. Ry. Co. v. Martin (Tex.), 71 S. W. (2d) 867; Texas & P. Ry. Co. v. Vaughan (Tex. Civ. App.), 73 S. W. (2d) 632; M., K. & T. Ry. Co. v. Roberts, 152 U. S. 114, 14 Sup. Ct. 496, 38 L. Ed. 377.

In the Quinn case, supra, the land was conveyed by warranty deed "to be used for railroad purposes only." The land described was a parcel "one hundred feet in width" across a certain described 40 acres. There was no claim of cessation of use of the land for railroad purposes. The defendant railway company, a successor grantee, claimed the right to drill on the land for oil and gas. The plaintiff claimed that an easement only was granted, and sought to enjoin drilling for oil and gas. It was held that an indefeasable fee vested by the original grant of the land. The court seems to have given considerable importance to the fact that the deed did not specifically designate the use to be for right of way. This language appears: "Where the land itself is conveyed, although for railroad purposes only, without specific designation of a right of way, the conveyance is in fee and not of an easement." In the present case the use is designated as right of way, and such designation distinguishes it from the Quinn case.

The Johnson case, supra, supports defendants' contention. It was held that the term "right of way" as used in the deed was descriptive of the property conveyed and did not define the tenure of the grantee. The Askew case, supra, concerned two acres of land. Plaintiffs contended that the grant "did not convey the two acres of land, but conveyed only a servitude, to use the land as a depot site, and that, as the grantee or its successor in title did not build a depot on the land, the servitude was lost by the prescription of ten years, for nonuse" under a cited statute. In ruling the question the court said: "The property granted is described in the deed, immediately following the description of the railroad right of way, thus: 'Also two acres of land for purposes of a railroad depot, to be measured off as follows, to-wit,' etc. Our opinion is that the expression 'for purposes of a depot,' merely described the purpose, or, we might say, one of the considerations, for which the grant was made. The language of the instrument does not limit the conveyance to that of

a mere servitude on the two acres of land. On the contrary, a clause was written in the deed, immediately following the description of the two acres of land, declaring that it was understood that the grant of the right of way along the line of the proposed railroad was a grant of only a right of way, to be used only for a right of way. The fact that no such limitation or stipulation was made with regard to the two acres of land strengthens our conviction that the intention of the grantor was to convey the two acres of land itself, and not merely a servitude on it.''

The Shreve case, supra, held that a condition subsequent was not created by a recital in a deed to a railway company that it was made in consideration of an agreement to erect and maintain a depot on the land conveyed. In the Gilbert case, supra, the deed was a warranty and was silent as to use, and the court said:

''We thus have power in the railroad company to take an estate in fee when it acquires land by purchase for railroad purposes, and we have a deed of conveyance unambiguous in terms which on its face conveys an estate in fee. This being so, we are not at liberty to go outside of the deed to ascertain the quantity of the estate conveyed thereby.''

. The Atlantic Coast line case, supra, concerned the validity of extension of a public highway across the right of way of the railroad company. It was admitted that the fee in the right of way land was in the railroad company, hence the question we have in the present case was not involved. In the course of the opinion the court said that ''a railroad right of way in this State (Florida) is not a mere easement or user for railroad purposes. Like other property, it is acquired by purchase or condemnation and vests a fee in the company acquiring it which cannot be divested except as the law provides.'' It will be observed that in Missouri, ''the fee of land taken (by condemnation) for railroad tracks without consent of the owner thereof shall remain in such owner, subject to the use for which it is taken. [Constitution, Art. 2, Sec. 21.]

The Marland case, supra, seems to support defendants' construction of the right of way deeds here involved. The deed was a general warranty. After the description was this: ''The same being for a right of way for a railroad track as the survey thereof is now located and said grantee agrees to construct two grade crossings over its track for the use of grantor, and proper water ways under its track where there is heavy fills.'' It was held that the language quoted was not a ''limitation upon the quality of the estate conveyed.'' There was a lengthy and vigorous dissent in which the law generally, on the question, is ably reviewed and discussed.

In the Texas & Pac. Ry. Co. v. Martin case, supra, the grant (in 1872) was to land in the city of Dallas, Texas, ''for depot purposes and uses.'' The land was used and occupied for depot purposes

until 1922, when it was abandoned for such purposes at the request of the city "and for general public welfare." It was held in effect that an indefeasible fee was conveyed and that the designation as to use was not a limitation upon the duration of the estate conveyed. It is significant that in the course of the opinion the court observed that "the land conveyed was not a strip across a larger tract for right of way purposes, but was a distinct tract in the city of Dallas."

Texas & Pac. Ry. Co. v. Vaughan, supra, involved a part of the same depot grounds in the city of Dallas as in the Martin case, and a deed also similar. The ruling followed the Martin case. In M., K. & T. Ry. Co. v. Roberts, supra, it was held that the Act of Congress (July 26, 1866) granting a right of way to the railroad company across the public lands in Kansas vested a fee title in the company.

To support the contention that only an easement was conveyed by deeds concerned in the present case, plaintiff cites Coates & Hopkins Realty Co. v. Kansas City Terminal Railway, 328 Mo. 1118, 43 S. W. (2d) 817, l. c. 823; Allen v. Beasley, 297 Mo. 544, 249 S. W. 387; Chouteau v. Mo. Pac. Ry. Co., 122 Mo. 375, 22 S. W. 458. And among the cases cited from other jurisdictions are these: Cincinnati, H & D. Ry. Co. v. Wachter (Ohio), 70 N. E. 974; Abercrombie v. Simmons, 71 Kan. 538; Santa Fe, Liberal & Englewood Railroad Co. v. Laune (Okla.), 168 Pac. 1022; Walker v. Ill. Central Railroad Co. (Ill.), 74 N. E. 812; Branch v. Central Trust Co. (Ill.), 151 N. E. 284; Jones v. Van Bochove, 103 Mich. 98, 61 N. W. 342; Cincinnati, I., St. L. & C. Ry. Co. v. Geisel (Ind.), 21 N. E. 470; Joseph v. Evans (Ill.), 170 N. E. 10; People ex rel. N. Y. Central & H. R. Railroad Co. v. Walsh (N. Y.), 105 N. E. 136; Blakely v. Chicago, K. & N. Railroad Co. (Neb.), 64 N. W. 972.

It is stated in 51 Corpus Juris, page 539, section 203, that "as a general rule, where land obtained by purchase or agreement is conveyed by an instrument which purports to convey a right of way only, it does not convey title to the land itself, but the railroad company acquires a mere easement in the land for right of way purposes, leaving the fee subject to such servitude in the owner." A number of cases are cited in the Corpus Juris notes.

We shall not review the many cases cited, from other jurisdictions, by plaintiff in the present case. We think it sufficient to say that the great weight of authority is to the effect that a conveyance of land to a railroad company for right of way purposes only, irrespective of the consideration, passes only an easement, and that when such use ceases, the land reverts to the grantor or his heirs.

We think that the right of way deeds involved in the present cause should be construed to mean for right of way purposes

"only." It is true that the word "only" does not appear, but if all purpose use was in contemplation, then why insert the language "for right of way for said railroad?" Our ruling is not in conflict with the ruling in Coates & Hopkins Realty Company, supra, because in that case the question of reverter of *right of way* was not involved, and in the grants there in question nothing appears as to user purpose. Also, it is significant that the court in that case said (328 Mo. l. c. 1136, 43 S. W. (2d) l. c. 823): ". . . lands condemned for railroad tracks and conveyances of rights of way only to railroad corporations are a very different matter, and our ruling herein is not intended to affect or to apply to such acquisitions of land."

The judgment should be reversed and the cause remanded with directions to enter judgment in favor of plaintiff and that defendants have no interest in the three parcels of right of way in question. It is so ordered. *Ferguson* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur, except *Hays, J.,* absent.