CITY OF UNIVERSITY CITY, a Municipal Corporation, Plaintiff, v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY ET AL., Defendants, JOHN W. FORSYTH, BETTY FORSYTH NEILL, BETTY WAY FORSYTH, WILLIAM FORSYTH, JULIA FLANAGAN PLETTNER, LOUISE FLANAGAN FERBER, EDWARD P. TESSON and ERNEST S. TESSON, in their own behalves and in behalf of all the heirs of Robert Forsyth, Exceptors, Appellants.—149 S. W. (2d) 321.

Division Two, April 3, 1941.

*Boudreau & Kramer, Staunton E. Boudreau, John B. Kramer* and
*Thos. J. Noonan* for appellants.

*Marvin E. Boisseau* for respondent.

ELLISON, J.—The appellants are the lineal heirs of Robert Forsyth, deceased, existent when the condemnation suit involved on this appeal was brought and tried in 1938. In 1871 by a deed recorded in book 442, p. 55, Recorder's office, St. Louis, he conveyed certain strips or parcels out of his suburban residence tract just west of St. Louis to the predecessor of the defendant C., R. I. & P. Ry. Co., for use as railroad right of way. He died two years later, in 1873, leaving a will by which he divided said residence tract into parcels and devised them severally to his children. The title to certain of these portions which included the right of way strips aforesaid has, by mesne conveyances, become vested in the present owners, divers persons and corporations.

Traffic on the railroad line built over said right of way has greatly diminished during recent years. Certain sections of the track have been abandoned and some parts taken up. The track on the right of way strips here involved is still in place, but is used only for freight switching service to two industries, and the defendant railroad has obtained authority from the Interstate Commerce Commission to abandon it, also. Appellants contend all this, plus the railroad's acquiescence in the condemnation suit already mentioned, is tantamount to complete abandonment of the line.

That suit was instituted by the respondent City of University

City in 1938 to condemn the aforesaid right of way land for a public street. The respondent railroad, its trustees, bond and note holders, the owners of the abutting land and the appellant heirs of Robert Forsyth all were joined as defendants. Appellants say in their brief that none of the abutting owners appeared or pleaded to the petition in the condemnation suit. But they further state that the (appellants) had pending at the time a separate action for the partition of the same land, in which they obtained an order authorizing and directing them to appear in the condemnation suit representing all the heirs of Robert Forsyth, deceased, and *all other persons interested* in the land to be condemned. Appellants assert that by virtue of that order in the partition suit they represented the *abutting owners* in the condemnation suit (although the latter had already been joined as defendants in that suit, and were interested in the land adversely to appellants). The respondent City says in its brief that the abutting owners did appear in the condemnation suit, some by accepting the damages awarded them, and others by filing exceptions to the award.

The condemnation suit was brought pursuant to a contract between the city and the railroad wherein it was agreed the damages to be assessed for the taking of the land should be $10,000, and that the railroad would accept a designated tract belonging to the city in satisfaction thereof. Commissioners were appointed who assessed the damages in amount as contemplated by the contract. Appellants filed exceptions to that assessment which were sustained. The respondent City then filed a motion to set aside the order sustaining said exceptions, and to strike out the exceptions on the ground that appellants had no title to or estate in the lands condemned. By stipulation this title issue was tried on that motion to strike, and the judgment was for respondent.

Appellants contended at the trial and contend here that the right of way land involved has been abandoned for railroad uses, and that in consequence the title has reverted to them as remote heirs of Robert Forsyth. This is on the theory that the deed executed by Mr. Forsyth to the predecessor railroad in 1871 conveyed a *base fee* determinable on a condition subsequent, namely abandonment of the right of way; that the reversionary interest remained suspended during the sixty-seven years the railroad was in operation, and settled down on appellants as the heirs of the grantor when the condition was breached; and that title to the right of way land *subject* to the railroad use did not pass under Robert Forsyth's will to the devisees of the parcels including the same, and thence by mesne conveyances to the present owners of the abutting land. The respondent City contends the deed conveyed to the railroad an *easement*, or an interest in the nature of an easement, subject to which the successive abutting owners held title, so that they together with the defendant railroad had the full title.

■ If, as we think, respondent is right in this contention, appellants have no interest in the cause of action, and it will be unnecessary to discuss two other points raised by them.* As regards appellants' contention that even if they have no interest in the land, still they *represent* the abutting owners who do, by reason of the aforementioned order in the partition suit, we can only say their right to be heard in the condemnation suit must rest wholly on whether they have an interest in the subject matter of that litigation. If they have none they cannot remain in the case solely to represent their adversaries in title who are already parties thereto in their own right. Having consented to try the title issue in the condemnation suit, they will not be permitted to reserve it for further adjudication in the partition suit. Indeed it seems that for the same reason they would have no further interest in the partition suit also.

■■ We proceed to a determination of the effect of the deed executed by Robert Forsyth, which was as follows, omitting land descriptions, and certain stipulations with respect to a tenant house, a well, fencing, cattle guards, etc. Italics and parenthesis are ours:

"1. Know all men by these presents, *that in consideration of the benefits and advantages arising from the location, construction, and operation* of the St. Louis County Railroad *and of the sum of One Dollar* paid, the receipt whereof is hereby acknowledged Robert Forsyth of the County of St. Louis and State of Missouri hath *granted and conveyed* and by these presents doth *grant and convey* unto the St. Louis County Railroad Company its successors and assigns *the right of way* over and upon his lands situate in Central Township St. Louis County Missouri located and described as follows viz.: . . .

"to have and to hold to the St. Louis County Railroad Company its successors and assigns *to and for the location construction and operation of its Railroad* . . .

"This agreement is *made for the location, construction and maintenance of said Railroad and for that use and purpose only,* and *this license* to operate in perpetuity of the said Railroad Company its successors and assigns (provided they) shall continue to maintain and operate their Railroad *and to cease with their non use of the same for such purpose.*"

This very deed was before this court in 1888 in an ejectment suit brought by the then heirs and devisees of Robert Forsyth: Morrill v. Wabash, St. L. & Pac. Ry. Co., 96 Mo. 174, 9 S. W. 657. Appellants

---

*The two points are: (1) that the City could not condemn the right of way for a street against the railroad, if, as the City contends, the railroad was still using it for railroad purposes; (2) and that the commissioners' award of damages was illegal because dictated by the contract between the city and the railroad instead of being based on the market value of the land.

say in their brief the deed was construed in that case to be a convey-ance on a condition subsequent. Some expressions in the opinion lend color to that contention. It said: "If the plaintiffs have any right to the possession of the property in suit, it is because there has been a breach of the conditions subsequent in the deed of their ancestor." A few lines later the opinion declared: "It follows that the only possible ground upon which plaintiffs can succeed is, that the condi-tions"—of the deed required the railroad company to do certain mentioned things which it had failed to do.

However, when the decision is read as a whole we think it does not bear the construction given it by appellants, at least so far as to hold the interest conveyed was a base fee with the possibility of reverter in Robert Forsyth, or those who should be his remote heirs at the time of the breach of conditions subsequent. It states the Forsyth heirs had brought the ejectment suit contending "that the deed from their ancestor to the St. Louis County Railroad Company became inoperative by force of Section 823, Revised Statutes 1879; and also that there has been a breach of the conditions subsequent in that deed." This statute provided that if any railroad company should fail to "finish its road and put it in operation in ten years from the time of filing its articles of association, . . . its corporate exist-ence and powers shall cease." The grantee railroad had been char-tered to build a line sixteen miles long, but had completed only six miles of it. The plaintiff Forsyth heirs contended the deed must be read in the light of that statute—in other words, that the conditions of the deed had been breached by failure to complete the entire chartered line within the 10-year limit fixed by the statute.

But the decision points out that the six miles which had been built and put in operation extended over the Forsyth land; and that the statute contained a proviso stipulating that "if a portion of their road shall be finished and in operation, they shall continue their corporate existence, with power to hold and manage the portion of their road so constructed, and for no other purpose." The decision held that part of the railroad could be sold under another statute for the payment of its debts upon forfeiture of its charter. So it was ruled that as to that part no breach of the conditions of the deed could be claimed because of the statute, supra. There was, therefore, no reason for the court to determine whether the interest passed by the deed was a base fee or an easement, and who held the reversionary interest. But the decision went on to say (omitting authorities cited; note and italics ours):

"Again, conditions subsequent are not favored in law, and are con-strued strictly, because they tend to destroy estates. . . . When relied on to work a forfeiture, they must be created in express terms

or by clear implication.* . . . Keeping these rules in view, we are of the opinion that this deed cannot be construed as upon a condition, that the road shall be built for the entire charter route of the grantee. No such a condition is created in express terms, nor does it appear by clear implication. The fair construction of the deed is that the property conveyed must be used for the construction and operation of a railroad thereon. This deed is not unlike those generally used for granting a *right of way* to railroad companies, and we are not cited to nor are we aware of any adjudicated case which would give to this deed the construction contended for by the plaintiffs.''

[4] Where a deed conveys a base fee determinable on a condition subsequent which may or may not eventuate, as appellants contend was true of the Forsyth deed, supra, the effect of it is immediately to vest the whole fee title in the grantee, subject only to be defeated by breach of the conditions and reentry by the grantor or his heirs. All that remains in them is a mere possibility of reverter. [18 C. J., secs. 383, 384, p. 364.] It is said that under the common law this interest is not an estate, is inalienable, unassignable and cannot be devised; but is descendible. [21 C. J., sec. 180, p. 1018.] Hence appellants' contention that the alleged reversionary interest in the right of way land did not pass under Robert Forsyth's will, but remained in suspension during the 67 years the railroad operated; and has now settled down on his remote heirs.

Respondent argues that said interest was and is alienable under R. S. 1865, sec. 1, p. 444, now Sec. 3401, R. S. 1939, Mo. Stat. Ann., p. 1862, which provides that ''conveyances of lands, or of any estate or *interest* therein, may be made by deed executed by any person having authority to convey the same . . .'' (Italics ours); also that the interest was and is devisable under R. S. 1865, sec. 1, p. 528, now as amended, Sec. 518, R. S. 1939, Mo. Stat. Ann., p. 309, which provides that ''every male person, twenty-one years of age . . . may, by last will, devise all his estate, real, personal and mixed, and all interest therein . . .''

If this is true the reversionary interest passed to Robert Forsyth's devisees by his will, and thence by successive conveyances to the present abutting owners regardless of whether the deed conveyed a base fee for an easement. But neither of the statutes cited defines the ''interest'' mentioned, and it has been said we must look to the common law for the answer to those questions. There is authority on both sides. [Challis on Conveyances, p. 153*, 173*; 1 Tiffany, Real Property (3 Ed.), secs. 208, 209, pp. 348, 350; 2 Id., sec. 314, p. 9;

---

*This is the universal rule. A few of the other authorities are: Haydon v. St. L. & S. F. R. R. Co., 222 Mo. 126, 139, 121 S. W. 15, 18; Catron v. Scarritt Collegiate Inst., 264 Mo. 713, 723, 175 S. W. 571, 572; German Evangelical Church v. Schreiber, 277 Mo. 113, 127, 209 S. W. 914, 917; Chouteau v. City of St. Louis, 331 Mo. 781, 791-2, 55 S. W. (2d) 299, 301; 18 C. J., secs. 367, 370, 381, pp. 352, 354, 363; 18 Am. Jur., sec. 65, p. 527.

Magness v. Kerr, 121 Ore. 373, 254 Pac. 1012, 51 A. L. R. 1466, 1473, note; Copenhaver v. Pendleton, 155 Va. 463, 155 S. E. 802, 77 A. L. R. 324, 344, note.]

■ We find it unnecessary to decide these questions because we take the view that the Forsyth deed conveyed only an easement, and did not create a base fee on a condition subsequent either expressly or by clear implication. Indeed, the implications are strongly to the contrary. It will be remembered the consideration therefor was nominal, other than the benefits accruing from the location, construction and operation of the railroad. It did not contain the words "grant, bargain and sell," which by statute were made to import a conveyance in fee simple with warranties unless expressly restrained by other language in the instrument. [R. S. 1865, sec. 8, p. 444; Sec. 3407, R. S. 1939, Mo. Stat. Ann., p. 1867.] It did expressly recite that what was conveyed was "the right of way over and upon" the grantor's lands, not the land itself; and that the conveyance was made "for the location, construction and maintenance of said Railroad and for that use and purpose only." Then it continued by declaring that "this license" should operate in perpetuity provided the Railroad Company, its successors and assigns, should "continue to maintain and operate their railroad," but was "to cease with their non use of the same for such purpose." Note the language that the *license* was to *cease*—not that some title conveyed was to revert on the specified contingency. The language of the deed is far more consistent with an intent to convey an easement for right of way. As stated in 51 C. J., sec. 203, p. 539:

"A 'right of way' in its legal and generally accepted meaning in reference to a railroad company's interest in land is a mere easement for railroad purposes in the lands of others; and therefore, as a general rule, where land obtained by purchase or agreement is conveyed by an instrument which purports to convey a right of way only, it does not convey title to the land itself, but the railroad company acquires a mere easement in the land for right of way purposes, leaving the fee subject to such servitude in the owner, particularly where the deed provides for reverter to the grantor in case the land is not used for such purposes. This rule applies, although the conveyance, for right of way purposes only, is in the usual form of a general warranty deed, particularly under a statute which authorizes the railroad company to acquire land only for the purposes of constructing, maintaining, and operating a railroad."

The grantee railroad company was chartered in 1871, at a time when the statute, R. S. 1865, sec. 2, II, p. 332, provided, as Sec. 5128(2), R. S. 1939, Mo. Stat. Ann., p. 2072 does now, that a railroad corporation should have power "to take and hold such voluntary grants of real estate and other property as shall be made to it to aid in the construction, maintenance and accommodation of its

railroads; but the real estate received by voluntary grant shall be held and used for the purpose of such grant only.'' This brings the statute in line ,with the above text when the conveyance is voluntary and made in aid of the construction, maintenance and accommodation (operation?) of the railroad.

■ This section of our statutes was construed with another* defining the general power of Missouri corporations to acquire and convey real estate, in Coates-Hopkins Realty Co. v. K. C. Term. Ry. Co., 328 Mo. 1118, 1133-1136, 43 S. W. (2d) 817, 821-823, decided by this court en banc ten years ago. It was there held the words ''voluntary grants'' in subsection II of Sec. 5128, supra, mean grants without voluntary consideration, gratuitous; and that under the subsection as a whole land deeded to a railroad reverts to the grantor on abandonment, when it was conveyed without valuable consideration, or when it was conveyed to induce a railroad corporation to take a defined route. · The decision further ruled a railroad was empowered by Sec. 5030 to purchase and hold real estate in fee simple for a valuable consideration, when legitimately necessary for its railroad purposes, but excluded from that holding voluntary grants of land and conveyances for right of way only.

In State ex rel. State Highway Comm. v. Griffith, 342 Mo. 229, 233, 114 S. W. (2d) 976, 978, decided by Division 1, the view was considered with seeming tolerance that the word ''voluntary'' as used in subsection II of Sec. 5128, supra, may not mean without a valuable consideration, but only without compulsion—in contradistinction to legal coercion by condemnation. But no attempt was made, of course, to overrule the banc decision supra. However, this Griffith case did hold, as had several others before it, that a conveyance to a railroad expressly for right of way purposes passes only an easement, especially where the deed does not purport to convey land, but only a right of way over the land. [See Chouteau v. Mo. Pac. Rd. Co., 122 Mo. 375, 386, 22 S. W. 458, 460; Boyce v. Mo. Pac. Rd. Co., 168 Mo. 583, 68 S. W. 920, 58 L. R. A. 422; State ex rel. Hines v. C. G. & J. Gravel Road Co., 207 Mo. 85, 103, 105 S. W. 761, 767; Allen v. Beasley, 297 Mo. 544, 548, 249 S. W. 387.]

■ Finally appellant contends the interest conveyed to the railroad company by the Forsyth deed was not an easement for two additional reasons: first, because it left no servient tenement in the grantor but passed a perpetual and exclusive right of occupancy for railroad purposes to the grantee, subject only to a condition subsequent. [The authority cited is U. S. Pipe Line Co. v. D., L. & W. Rd. Co., 62 N. J. L. 254, 264-5, 41 Atl. 759, 762, 42 L. R. A. 572, 577.] But the deed in that case conveyed *land* described, not merely a right of way thereover; and, furthermore, it was held the company's charter per-

---

*R. S. 1865, sec. 1, IV, p. 326, Sec. 5030, IV, R. S. 1939, Mo. Stat. Ann., p. 1999.

mitted it to *condemn* a fee simple interest in land for right of way, and therefore to purchase the same interest.

The other reason assigned is that a conveyance of right of way to a railroad by metes and bounds is not an easement, but something more than a mere right of passage over the land. The "leading" case cited is New Mexico v. U. S. Trust Co., 172 U. S. 171, 181. That case was concerned only with the question whether the "right of way" of a certain railroad was taxable under particular statutes. It was conceded that railroad right of way is technically an easement, though it has some attributes of a fee because of its continuous and exclusive use. But the question is settled in this State by an unbroken line of decisions, supra, that railroad right of way is an easement, so far as the reversionary interest is concerned, if the right be granted only for that use. That an easement can be granted to be terminated on condition is not disputed. [19 C. J., sec. 155, p. 944.]

For the reasons stated the judgment below is affirmed. All concur.

PER CURIAM:—In their motion for rehearing appellants challenge our opinion for two reasons. ■ First, while acknowledging our ruling that Morrill v. Wabash, St. L. & Pac. Ry. Co., 96 Mo. 174, 9 S. W. 657, did *not* hold Robert Forsyth's deed in 1871 conveyed a base fee on a condition subsequent, yet they insist we overlooked their further contention that the then heirs and devisees of Robert Forsyth brought the Morrill suit on the *theory* that it did, and thereby made that theory "the law of the title to the strip of land in suit" and bound the present heirs and descendants of Robert Forsyth, as well as the mesne grantees of the abutting land down to date.

Appellants base this assertion on two grounds. One is that the plaintiff heirs and devisees of Forsyth brought the Morrill action in ejectment *jointly*, which they could not and would not have done unless they had believed the Forsyth deed conveyed a base fee on a condition subsequent; and were claiming the whole strip as reversioners after breach of that condition. If they had been of the contrary view, say appellants, that the deed only conveyed an *easement*, subject to which Robert Forsyth retained the title, there would have been no reason for his *heirs* to join as plaintiffs, for in the meantime Forsyth had died leaving a will in which he had divided the servient land into separate parcels and devised them severally to his children. On the easement theory the heirs and devisees could not have sued jointly, but the owners of each parcel would have been compelled to bring a separate action for the part of the strip carved out of it. In other words, there was a misjoinder of parties and causes of action if the deed conveyed only an easement. The other ground for appellants' first contention is the statement in the opinion in the Morrill case discloses that the agreed statement of facts therein recited Forsyth's deed "conveyed the strip of land in question, it being a part of a

large tract, . . . for a right of way.'' Appellants say this shows it was the theory of the plaintiffs in the ejectment suit that the deed conveyed the land itself, not merely a right of way over the land.

We are unable to find where appellants made these points in their brief here. In their motion for rehearing they cite us to several pages of the brief, but these appear merely to refer to the theory of the *decision,* not to the theory of the *parties* to the case. And whatever the latter may have been, we are unable to see how it would be controlling after the court had spoken. Perhaps appellants mean the decision ought to be interpreted in the light of the trial theory of the parties, and that we have erred in our construction of the opinion.

With that thought in mind we have inspected the original record in the Morrill case on file here. Nowhere in it is there any claim that the Forsyth deed conveyed a base or qualified fee on a condition subsequent. The brief here for the plaintiffs-appellants in the old case refers to it as a *grant of right of way* on conditions subsequent. One of plaintiff's refused instructions set out in the brief declares the deed from Forsyth ''simply grants the right of way through his lands.'' The fact that the plaintiffs there claimed the grant was on conditions subsequent, and that the Morrill decision used the same or equivalent language, signified nothing as regards the extent and nature of the interest conveyed subject to those conditions. One of the cases cited in the Morrill brief was Baker v. C., R. I. & P. Rd. Co., 57 Mo. 265, 269, 271, where the landowner executed a mere relinquishment of right of way. That decision held it was a mere *license* on a condition subsequent. In other words a condition subsequent can be annexed to an estate less than a fee—even to a license, or to an easement as we pointed out in the principal opinion.

Other points might be mentioned. For instance, if the plaintiffs in the Morrill case believed Robert Forsyth's deed left in him only a mere possibility of reverter, which was not devisable, and that on a supposed breach of the conditions subsequent the title had settled down on his *heirs* at the time, why did they join his *devisees* as parties plaintiff? What appellants say about the will in their motion does not touch that question. They say Robert Forsyth's will is ''entirely silent as to whether or not any intention existed either to include or exclude'' the right of way strip conveyed by his previous deed. But they assume, it seems to us, that his intention was to leave it out, which would mean he recognized he then had only a mere non-devisable possibility of reverter, thereby conforming to their theory of the law. However, the will devised each parcel without excepting the right of way strip, which he well might have done if he meant to devise the land *subject* to a railroad easement (see Kellogg v. Malin, 50 Mo. 496, 499) ; and again we ask, if the plaintiffs in the Morrill suit believed the will meant to leave out the right of way strip, why were the devisees thereunder included as parties plaintiff?

The other ground for rehearing mentioned in the motion is that in the instant condemnation suit the agreed damages to be paid for the right of way strip are $10,000, but that the defendant railroad company is awarded nearly all of it, the aggregate awards to the abutting owners being only $110, with no objection on their part. Appellants say this indicates they think their interest is merely nominal; and that if the railroad company has only an easement which it has practically abandoned, it would be unconscionable to give it nearly all the money. Those questions are not involved on this appeal. In the construction of the Forsyth deed we must be governed by what it says, allowing something to extrinsic aids to construction, insofar as the deed may appear to be ambiguous. As indicated in the principal opinion we think it is clear. And we find nothing in the Morrill case pointing to a different conclusion, except that there may have been a misjoinder of parties and causes of action. But the point was not raised.

The motion for rehearing is overruled.